[Crim. No. 7239.   In Bank.   May 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID JACOB SEITERLE, Defendant and Appellant.

Earl Klein, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, Norman H. Sokolow, Deputy Attorney General, William O. Mackey, District Attorney, and Roland Wilson, Deputy District Attorney, for Plaintiff and Respondent.

GIBSON, C. J.—Defendant was indicted for the murders of Mr. and Mrs. Charles Duvel, and as to both counts he pleaded guilty to murder in the first degree. He also entered pleas of guilty to charges of several other crimes, including two counts of kidnaping for the purpose of robbery with bodily harm.

Defendant has been tried twice on the issue of penalty for the murders. In the first trial the jury fixed his punishment at death for each of the murders and at life imprisonment for each of the kidnaping counts. Under section 209 of the Penal Code the minimum punishment that could have been imposed for the kidnapings was life imprisonment "without possibility of parole," and on appeal we held that defendant was prejudiced in regard to the murder counts because the jury was not so instructed but to the contrary was told, without qualification as to any of the offenses involved, that a prisoner serving a life sentence might be paroled after seven years. (*People* v. *Seiterle*, 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913].) The portion of the judgment imposing life imprisonment for the kidnaping offenses was modified to include the words "without possibility of parole," and that portion of the judgment was affirmed as modified. The judgment was reversed insofar as it related to the issue of penalty for the murder offenses.

At the second penalty trial the jury again fixed the punishment at death for each of the murders. A motion for new trial was denied, and this appeal is now before us automatically under subdivision (b) of section 1239 of the Penal Code.

On August 10, 1960, defendant, who was 19 years old, met two 16-year-old boys, Karl Gentry and Tom O'Hara, in Riverside. They drank some beer and became intoxicated. One of them suggested a holdup, and defendant said he knew some people who "had a lot of money." The evidence is conflicting as to whether defendant also said that it would be necessary to kill the people because they would recognize him. About 2 a.m. defendant and the others drove to the house of the victims.

Mr. Duvel opened the door when defendant knocked, and defendant and Gentry entered. Defendant pointed a BB pistol, which looked like a Colt .45 revolver, at the Duvels, and

when Mrs. Duvel reached for the gun, he told her to leave it alone or he would shoot her. Gentry asked where the money was, and Mrs. Duvel said she would show them. The Duvels, defendant, and Gentry went into the bedroom where Mr. Duvel obtained about $200 which he handed to defendant. The Duvels were then forced to lie down on their beds and were tied with cord and stockings. There is a conflict in the evidence as to what next ensued in the bedroom. According to Gentry, defendant started to choke Mrs. Duvel and told him to choke Mr. Duvel, he attempted to do so but was unsuccessful, and he then stabbed the Duvels with a knife. Defendant denied choking Mrs. Duvel. He testified that he became sick when he saw Gentry stab Mr. Duvel and left the room and that he intended no harm to the victims other than the robbery.

An autopsy established that the Duvels died as a result of stab wounds and that Mrs. Duvel probably would have died as a result of strangulation if she had not been stabbed.

From his infancy defendant was raised by his aunt and uncle, Mr. and Mrs. Jacob Seiterle, who gave him their name. He attended St. Edward's Catholic School in Corona and was an altar boy. He was also a boy scout. When he was about 12 years old his mother visited him, and after her visit there was a change in his personality and he became confused and upset. About the same time, he was struck on the head with a lead pipe, and this caused him to have severe headaches. At 17 he enlisted in the Marine Corps but was released from active duty after a few months because of poor health.

Defendant contends that the prosecutor made improper remarks concerning parole in his opening statement and that the effect of the remarks on the jury was accentuated by the admission of certain testimony on the subject which was later stricken. A conference was held in the judge's chambers prior to the opening statement and at that time the judge asked the attorneys, "Is there any way we can tell this jury that life without possibility of parole doesn't necessarily mean that?" The judge said in effect that there was no such thing as life imprisonment without possibility of parole "from the practical standpoint"; that Adult Authority records showed that 34 out of 46 persons who were serving that sentence and were made eligible for parole by a 1951 amendment to section 209 of the Penal Code had actually been paroled; that all "the judges so far as I know, including the Supreme Court, received the report of the Adult Author-

ity"; and that, in view of the amendment to section 209 and "contemplated future amendments as time goes on," life imprisonment without possibility of parole merely meant a life sentence without automatic consideration of parole at the end of seven years.[1] The judge asked the prosecutor if the administrative officer of the Adult Authority would be prepared to testify on "this subject," and the prosecutor replied that he intended to have him do so.

In his opening statement the prosecutor said that he intended to call the administrative officer of the Adult Authority as a witness and that he expected the officer's testimony to show that 46 persons were serving terms of life imprisonment without possibility of parole in 1951, that in that year a statutory amendment was enacted permitting the parole of such persons, and that thereafter 34 out of the 46 persons were paroled. During these remarks defendant objected on the ground that the 1951 amendment also changed the offense of kidnaping and that therefore information concerning persons sentenced before 1951 was immaterial. The court ruled that the problem would be faced when the testimony was offered.

The administrative officer testified that in 1960 a study was made of inmates serving terms of life imprisonment without possibility of parole and that as a result of a 1951 statutory amendment 46 such inmates were made eligible for parole. Defendant objected to the testimony and moved to strike it on the ground that the Adult Authority's action in regard to persons convicted under section 209 prior to the amendment was not relevant because defendant was not such a person. The motion was granted, and the jury was instructed to disregard the testimony. Later in the trial the jury was also admonished that statements by counsel regarding the facts in the case did not constitute evidence and that the determination of the penalty was to be based solely on the evidence and the law.

■ Where, as here, an existing statute requires that a defendant be sentenced to life imprisonment "without possibility of parole" in regard to an offense other than murder,

---

[1]The 1951 amendment to section 209 of the Penal Code (Stats. 1951, p. 4167) made asportation of the victim an essential element of the offense of kidnaping for the purpose of robbery; prior to the amendment any detention incident to robbery was punishable as kidnaping. The amendment also provided: "Any person serving a sentence of imprisonment for life without possibility of parole following a conviction under this section as it read prior to the effective date of this act shall be eligible for a release on parole as if he had been sentenced to imprisonment for life with possibility of parole."

care must be taken in a trial on the penalty for murder to avoid improper indications to the jury that the defendant may be released on parole by the Adult Authority if his punishment for murder is not fixed at death. Accordingly, this court in *People* v. *Seiterle*, 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913], held that it was reversible error to instruct that a prisoner serving a life sentence could be paroled after seven years, without qualification as to the offenses involved and without telling the jury that the minimum sentence defendant could receive for the kidnapings was life imprisonment without possibility of parole.

Of course, as the court pointed out in its instructions to the jury, the Legislature may at some future time change the law in a manner affecting the parole eligibility of convicts serving sentences of life imprisonment without possibility of parole, and it has been held proper to so inform the jury. (*People* v. *Wein*, 50 Cal.2d 383, 397-398 [326 P.2d 457]; *People* v. *Jensen*, 43 Cal.2d 572, 580-581 [275 P.2d 25]; *People* v. *Chessman*, 38 Cal.2d 166, 189-190 [238 P.2d 1001].) However, the possibility of such a change cannot justify arguments and evidence as to the paroling of prisoners under a past statutory amendment which related to persons in a different position from that of the defendant and could have no application to him. The 1951 amendment of section 209 was designed to deal with a special situation involving a relatively small number of persons, and it not only restricted the benefits of the change regarding parole to those previously convicted under the section but altered the character of the crime of kidnaping for the purpose of robbery by requiring asportation as an essential element. In the case of *People* v. *Purvis*, 52 Cal.2d 871, 884-886 [346 P.2d 22], the principle was established that in a trial on the penalty for murder evidence on the subject of parole must, in order to be admissible, relate to the treatment of persons in substantially the same position as that of the defendant. We there held that parole records concerning 14 persons convicted of offenses other than first degree murder did not afford a basis for a conclusion as to how first degree murderers might be dealt with and that evidence with respect to parole must be limited to practices regarding first degree murderers since otherwise every penalty trial would be turned into a trial of the Adult Authority and its wisdom in paroling any number of other prisoners.

■ The trial judge's remarks in chambers demonstrate that, initially, he did not give sufficient consideration to the import of our decisions in *People* v. *Seiterle,* 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913], and *People* v. *Purvis,* 52 Cal.2d 871 [346 P.2d 22]. He should have ruled at the outset that the line of argument and the evidence in question were improper instead of encouraging the prosecutor to pursue the matter. However, a correct ruling was ultimately made, and in view of the admonitions given to the jurors we must presume, in accordance with the general rule, that they disregarded the stricken testimony and gave no evidentiary effect to the remarks by the prosecutor in his opening statement. (*People* v. *Duncan,* 53 Cal.2d 803, 818 [3 Cal.Rptr. 351, 350 P.2d 103]; *People* v. *Lyons,* 50 Cal.2d 245, 261 et seq. [324 P.2d 556]; *People* v. *Prather,* 134 Cal. 436, 438-439 [66 P. 589, 863].) This is not one of those exceptional cases in which the improper subject matter is of such a character that its effect on the minds of the jurors cannot be removed by the court's admonitions.

It is also asserted that the court erred in permitting certain cross-examination and impeachment of defendant. From an examination of the record we are satisfied that most of the questions were proper and that, although defendant's objections should have been sustained as to a few of the matters complained of, those matters were of minor importance and did not prejudice him.

■ The closing argument of the prosecutor included statements that he did not believe defendant would spend the rest of his life in prison if the verdict were life imprisonment and that in his opinion it was "a very distinct possibility" some governor might exercise his clemency powers and release defendant. Defendant claims that the prosecutor thereby insinuated that he had information which the jury did not have. However, defendant is not in a position to complain since he did not object at the trial and any harmful effect of the remarks could easily have been removed by an instruction to disregard them. (*People* v. *Brice,* 49 Cal.2d 434, 437 [317 P.2d 961].)

■ The prosecutor, after commenting that the Governor has power to pardon prisoners and that this power had been exercised in the past, said, "As a matter of fact, it is a matter of common knowledge right at this very moment that one of the serious issues in this present campaign between Mr. Nixon

and Mr. Shell on the one hand, and Mr. Brown on the other hand, is the question of the death penalty.'' Defendant objected and asked the court to admonish the jury to disregard the statement. The court stated that it probably would be better not to speculate on the outcome of the election. The prosecutor then said that what he was ''getting at'' was that it was a matter of common knowledge that the Governor had exercised his clemency powers in ''many cases.'' Defendant objected, stating that there was no evidence such powers had been exercised ''many times.'' The court said, ''I think possibly that should be stricken and the jury is admonished to disregard it.'' The prosecutor's remarks concerning the issues in the campaign and the Governor's exercise of his clemency power were highly improper, and the court should have been more emphatic in its rulings, but we must presume that the jury obeyed the admonition to disregard the prosecutor's statements.

The jury was instructed that a prisoner serving a life sentence upon a conviction of murder in the first degree may be paroled after he has served seven years, that defendant is now serving life imprisonment without possibility of parole as a result of his pleas of guilty to the kidnaping charges, and that a sentence of life imprisonment with possibility of parole for murder in the first degree will merge and run concurrently with a sentence of life imprisonment without possibility of parole. Defendant contends that the direction concerning a murderer's eligibility for parole after seven years may have misled the jury and could serve no useful purpose because his conviction on the kidnaping charges made him ineligible for parole. We cannot agree that there was any substantial likelihood that the jury was misled into understanding that defendant would be eligible for parole at the end of seven years.

We find no merit in defendant's contention that, in view of the proscription against multiple prosecution in section 654 of the Penal Code, the trial court erred in refusing to instruct the jury that it should decide whether the kidnapings and murders were incident to one objective, thus constituting an indivisible transaction. Section 654 provides: ''An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under

either one bars a prosecution for the same act or omission under any other.''

■■■ The proscription against multiple prosecution does not apply where there has been but one prosecution, i.e., a single criminal action; it prohibits only a *subsequent* prosecution for the same act or omission, which, of course, means the filing and pressing of a new criminal action. (*People* v. *Tideman*, 57 Cal.2d 574, 584-585, 587 [21 Cal.Rptr. 207, 370 P.2d 1007].) ■■■ Thus where, as here, a new criminal action has not been brought, there can be no violation of the proscription against multiple prosecution.

■■■ It should be noted with respect to the other proscription in section 654, namely, the one against multiple punishment, that an ''act'' giving rise to more than one offense within the meaning of the statute may result in conviction of both crimes but that only one, the more serious offense, may be punished. Where two sentences are erroneously imposed, the error can readily be cured on appeal, if important, by reversing the judgment as to the lesser sentence. (*People* v. *McFarland*, 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].) However, if one of the sentences is death, such corrective procedure is unnecessary, and we have affirmed the death penalty, stating that no useful purpose would be served by a reversal as to the lesser offense. (E.g., *People* v. *Chessman*, 52 Cal.2d 467, 495-496 [341 P.2d 679]; *People* v. *Wein*, 50 Cal.2d 383, 409-410 [326 P.2d 457].) It is immaterial in this connection whether the penalties of death and of life imprisonment have been imposed simultaneously or separately in one criminal action, since the purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability (*Neal* v. *State of California*, 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839]). Accordingly, the proscription against multiple punishment in section 654 does not preclude affirmance of the death penalty here, whether or not the murders and kidnapings arose from the same ''act'' within the meaning of that section.

The judgment and the order denying a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied June 26, 1963.