[Crim. No. 7507.   In Bank.   Aug. 13, 1964.]

In re DAVID JACOB SEITERLE on Habeas Corpus.

Earl Klein, under appointment by the Supreme Court, for Petitioner.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Albert W. Harris, Jr., Edward P. O'Brien and Norman H. Sokolow, Deputy Attorneys General, William O. Mackey, District Attorney (Riverside), and Roland Wilson, Chief Trial Deputy, for Respondent.

GIBSON, C. J.—David Jacob Seiterle and two companions were charged with the murders of Mr. and Mrs. Charles Duvel and with kidnaping for the purpose of robbery with bodily harm. He first pleaded not guilty and not guilty by reason of insanity but later changed his plea to guilty on each count. The jury fixed his punishment at life imprisonment for the kidnaping offenses and at death for the murders. On appeal the portion of the judgment imposing life imprisonment for kidnaping was modified to read ''without possibility of parole,'' and, insofar as the judgment related to the murder counts, it was affirmed as to the issue of guilt but was reversed as to the issue of penalty. (*People* v. *Seiterle* (1961) 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913].) A subsequent petition to prevent a retrial on the issue of penalty for the murders was denied by this court with opinion in (1962) 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697]. At the second trial on the question of penalty for the murders the jury fixed the penalty at death, and that judgment was affirmed in *People* v. *Seiterle* (1963) 59 Cal.2d 703 [31 Cal. Rptr. 67, 381 P.2d 947].

The present petition, which was filed two weeks before the day set for Seiterle's execution, contained allegations not made in any of the prior proceedings. It was alleged, among other things, that a confession he had given to the police was "forced and illegal" and that his plea of guilty was the result of a threat by Roland Wilson, Deputy District Attorney of Riverside County, to call his wife as a witness at the trial unless he pleaded guilty. We stayed execution of the judgment of death, issued an order to show cause, and appointed the Honorable Clarence L. Kincaid, retired Judge of the Superior Court of Los Angeles County, as referee to take evidence relating to the matters raised by the petition. The referee found that Seiterle's assertions were not true.

We will first summarize briefly the evidence introduced at the penalty trial regarding the circumstances surrounding the commission of the crimes. Seiterle, then 19 years of age, and two 16-year-old boys, Gentry and O'Hara, were driving about in Seiterle's car. They drank some beer and became intoxicated. During the course of the evening Seiterle suggested "holding up a house," and said he knew some people who kept a large amount of money in their home. The evidence was conflicting as to whether Seiterle said it would be necessary to kill the victims because they would recognize him. There was also considerable conflict in the evidence as to what occurred in the house. According to Seiterle, he did not intend any harm to the Duvels other than robbery and it was Gentry who killed both of them. Gentry's testimony was to the effect that Seiterle intended the killings and that, although Gentry stabbed both victims, Seiterle had previously choked Mrs. Duvel. An autopsy established that Mrs. Duvel probably would have died as a result of strangulation if she had not been stabbed.

The evidence at the reference hearing showed that on the evening of August 17, 1960, about a week after the murders, an officer who had been told that Seiterle was wanted for questioning in connection with the crimes, saw him in a bus depot and asked him to come to the police station to answer some questions. Seiterle went with the officer to the police station, where he was questioned by several officers and Mr. Wilson until about 1:30 a.m. on August 18. He was not informed of his right to counsel or of his right to keep silent and was not told that anything he said could be used against him.

By a tape recording made of the interrogation on this

occasion and by testimony of the interrogating officers it was shown that throughout the questioning Seiterle claimed he was innocent and gave various false stories as to his whereabouts on the night the crimes were committed. At one point he said that he had been at home with his wife, and he was permitted to make a monitored telephone call to her during which he sought unsuccessfully to have her verify that he had been at home. Relatively early in the interrogation, Seiterle started making statements with respect to an attorney. He said in response to a question, ''I want to talk to my lawyer before I say anything else.'' Mr. Wilson and two officers who were present made no comment with respect to this statement but continued the questioning, during which Seiterle made several statements such as, ''I want to talk to my lawyer before I say anything else . . . . I want to talk to my lawyer before I say that . . . . When I tell my lawyer, if he advises me to tell you then I'll tell you.'' He asked whether an attorney named John Hughes was a criminal lawyer, and Mr. Wilson replied, ''I don't know of him taking any criminal cases. I have some doubts if he would handle a murder too.''

About the time the questioning was concluded in the early morning of August 18, a policeman telephoned Seiterle's parole officer, saying that Seiterle was probably involved in the Duvel murders, and the parole officer informed the caller that Seiterle had violated his parole by getting married and changing his residence and job without permission. Mr. Wilson then requested and obtained authority to hold Seiterle in custody as a parole violator ''pending further investigation of his possible connection with the murders of Mr. and Mrs. Duvel.'' Seiterle was booked at 2:25 a.m. on a charge of violating parole.

During the daytime on August 18 Seiterle spent several hours in the ''day room'' at the jail, where there were recreational facilities and he was free to mingle with other inmates. According to the uncontradicted testimony of his wife, she attempted to visit him on August 18 but was told that Saturdays were visiting days and that she could not see him until the following Saturday, August 20. There was also uncontradicted testimony of Seiterle that in the evening of August 18 he attempted to send a letter to his wife but that it was returned to him by a trusty who said that an officer directed him to return it.

Starting about midnight on August 18, Seiterle was questioned again and a tape recording of that interrogation ses-

sion shows that he immediately began to inquire as to what his wife said to the officers during the day and that the officers, after urging him to "talk," stated several times that his wife was "pretty disgusted." (The wife denied having indicated such an attitude to the officers.) Seiterle asked whether she had said anything about a separation or a divorce, and the officers replied that she had not. He continued to claim that he was innocent. The police informed him that Gentry and O'Hara had made statements that day admitting their participation in the crimes and implicating him as primarily responsible. Shortly thereafter, within about an hour and a half of the commencement of the interrogation session, Seiterle began to acknowledge his presence in the Duvel home on the night in question, stating, "There's one reason I'm going to do this. I'd fight it, but I'm going to do it for my wife." When the police made several statements suggesting that Seiterle was the one who had stabbed the Duvels, he asked, "What if I can prove it wasn't me that used the blade," and he subsequently made repeated remarks reflecting concern that he would be viewed as the stabber. After giving a verbal account of what had occurred, he wrote a four-page confession, stating, among other things, that Gentry had stabbed the Duvels. In the course of writing he remarked, "I'll tell you how I feel about this, you know, this filling out a report of all that. You'd never have got it out of me if they hadn't have blabbed. . . ."

Before the confession was signed, an officer called Seiterle's attention to its last sentence, which read, "This is a true statement made of my own free will with no threats or promises being made." The officer asked Seiterle whether this statement was correct, saying, "And you can read that last line over again, and think about it, Dave, because that's the way we want these things to be." Seiterle replied, "Yes, I am."

Several days after his confession Seiterle was arraigned, and the Public Defender of Riverside County was appointed as his attorney. About two weeks later, on September 8, he entered his initial pleas of not guilty and not guilty by reason of insanity. His change of plea to guilty occurred on November 14. The public defender represented him at all times between his arraignment and the change of plea.

Seiterle testified at the reference hearing that he received only a ninth-grade education, that the police in questioning him had made him believe his wife was "through" with him, and that at the time he confessed he was frightened and

confused and had not eaten anything or slept more than an hour or two since coming to the police station the previous evening. According to Seiterle he gave his attorney a description of the circumstances surrounding his confession, complaining that he had been "pressured," and the attorney told him, "Well, it doesn't make any difference, it's too late now, they've already got it." Seiterle further testified that the change of plea was influenced by conduct of Mr. Wilson, who visited him in jail two or three times before November 14, 1960, either alone or in the presence of an officer. Seiterle's version of what occurred during these visits was that Mr. Wilson told him his wife would be subpoenaed as a witness at the trial unless he pleaded guilty, asked him whether he did not think he had "caused her enough trouble," and suggested that she might lose her job if the bank where she was working under her maiden name discovered "what her real name was."

The police officers who questioned Seiterle testified that he was not threatened or coerced in any way and that his confession was free and voluntary. Evidence was introduced to the effect that, in view of the jail routine followed at the time, he would have had an opportunity to eat and to rest for several hours during the day preceding the confession and that he did not request to talk to his wife except on the occasion when he was permitted to telephone her. The interrogation tapes as transcribed do not contain any threats or promises by the police, any charge by Seiterle that he was being ill-treated, or any request by him to talk to his wife. It does appear that, at the beginning of the session during which he confessed, he stated, "I'd like to have my turn to sleep," and that he yawned to some extent thereafter.

The attorney who represented Seiterle (Public Defender E. Scott Dales, now a judge of the municipal court) testified that, although Seiterle had discussed with him the circumstances surrounding the confession, Seiterle never complained to him of any pressure exerted by the police. He further testified that in his opinion Seiterle's plea of guilty was free and voluntary. He said that he and Seiterle had discussed whether the plea should be changed to guilty and that he had advised Seiterle that "the evidence was overwhelming" and that the best method of proceeding was to change the plea, "cut down" the amount of evidence that would be introduced by the prosecution at the penalty trial, and "more or less throw ourselves on the mercy" of the jury. During

his discussion with Seiterle no mention was made of any threat by Mr. Wilson to call Seiterle's wife as a witness.

Mr. Wilson testified that he at no time made any threats to Seiterle or exerted duress on him with respect to the plea of guilty. He denied making any remark to the effect that he might call Seiterle's wife as a witness if Seiterle did not plead guilty.

In finding that Seiterle changed his plea to guilty freely and voluntarily, the referee specifically determined that Mr. Wilson did not make any threats to Seiterle concerning his plea, and this determination was fully justified. Seiterle urges us, however, to reject the finding of voluntariness on another theory, namely, that his confession to the police was coerced and that the existence of the confession caused him to plead guilty. He asserts in this connection that various facts, including a denial of his right to counsel during questioning by the police, were established which compel a conclusion that the confession was involuntary.

The referee determined that Seiterle's confession was voluntary and that the factor motivating Seiterle to make it was that Gentry and O'Hara had informed the police that they and Seiterle had participated in the killings, with Seiterle being primarily responsible. We adopt that finding. It is entitled to great weight (*In re Imbler* (1963) 60 Cal.2d 554, 562 [35 Cal.Rptr. 293, 387 P.2d 6]) and is in accord with ample evidence, including Seiterle's remarks on the night of August 18 reflecting concern that he might be viewed as the stabber and his statement as he wrote the confession, "You'd never have got it out of me if they hadn't have blabbed."

We need not consider whether the confession was improperly obtained under the rules announced in recent decisions of the United States Supreme Court which deal with the right to counsel before trial. (*Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]; *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].) Assuming that Seiterle's confession was obtained in violation of those rules, it was not used to convict him; his conviction was based on his plea of guilty. Although he now asserts that the existence of the confession caused him to plead guilty, his initial plea, closest in time to the confession, was one of not guilty and not guilty by reason of insanity, and his testimony at the reference hearing did not point to the confession as the motivation for the change of

plea but was to the effect, now established to be false, that the motivation was misconduct by Mr. Wilson.

Under all the circumstances, we are satisfied that there is no sound basis for disturbing the judgment against Seiterle so far as concerns the issue of guilt. ■ A new trial, however, will be necessary on the issue of penalty for the murders in view of our decision in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], which was decided after the reference proceeding was ordered and held.

The trial court gave an instruction of the type condemned in *Morse,* permitting the jury to consider the Governor's power to pardon, the judge's power to reduce punishment, and the fact that a person sentenced to life imprisonment for murder is eligible for parole after seven years. In his argument to the jury the prosecutor urged that Seiterle, if sentenced to life imprisonment, would not spend his life in prison and that there was a distinct possibility some governor might release him.

■ The fact that Seiterle was already serving a sentence of life imprisonment without possibility of parole as a result of the kidnaping convictions affords no ground for departing from the principles established in *Morse.* Permitting the jury to consider the Governor's pardoning power and the trial judge's power to reduce punishment is no less improper in a situation like the present one than in *Morse,* and the instruction regarding a convicted murderer's eligibility for parole after seven years is even more inappropriate in this type of situation since the least punishment the defendant can receive under the law relating to kidnaping is life imprisonment without possibility of parole. It should be pointed out that, by an instruction not specifically considered in *Morse* but obviously contrary to the principles there set forth, the jury was told that the Legislature might at some future time change the law affecting the parole eligibility of convicts serving life sentences without possibility of parole.

■ Seiterle raised some of the objectionable matters on his appeal in *People* v. *Seiterle* (1963) 59 Cal.2d 703 [31 Cal. Rptr. 67, 381 P.2d 947], and could not have successfully raised the others under the law existing prior to *Morse.* The errors were prejudicial, and he is entitled to relief under our holding in the case of *In re Jackson, ante,* p. 500 [39 Cal. Rptr. 220, 393 P.2d 420].

The writ is granted as to the penalty trial. The remittitur issued in Crim. 7239, *People* v. *Seiterle,* is recalled and

the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects the judgment is affirmed. Seiterle is remanded to the custody of the Superior Court of Riverside County.

Traynor, J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.

McComb, J., concurred in the judgment.