[Crim. No. 128.   Fifth Dist.   Dec. 16, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. MARIO
GARCIA TAPIA, Defendant and Appellant.

Mario Garcia Tapia, in pro. per., and Simon Marootian, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (R. M.), J.—In April 1964 the appellant filed a petition for a writ of error *coram nobis* in the Superior Court of Fresno County, seeking to set aside his 1961 conviction for violation of section 11500 of the Health and Safety Code. This petition was denied by the trial court, and the appellant appeals from that order.

On July 7, 1964, this court granted permission for the filing of a belated appeal, and pursuant to appellant's request, counsel was appointed to represent him on this appeal.

While in the county jail on another charge of violating section 11721 of the Health and Safety Code as a user or addict of narcotics, notice of a package arriving from Calexico, California, at the Greyhound Bus Depot was received at the address of appellant's brother and sister-in-law, where appellant had also been living. This sister-in-law, who speaks little English, was arrested when she picked up the package which contained one ounce of heroin, she later stating that she thought it had clothing in it. After being taken into custody by the officers, the sister-in-law claimed that she was picking up the package for her brother-in-law, the appellant. On his arrest report, the appellant admitted that he sent $200 to Calexico, "and a party from there mailed the narcotics to him."

Thereafter, on February 6, 1961, the appellant pled guilty to an information which charged him with violation of section 11500 of the Health and Safety Code, and admitted four prior convictions—three, involving section 11500, and one, section 11721, of the Health and Safety Code—and that he had served the terms in the state prison.

Throughout the hearing he was advised of his rights to have an attorney represent him but he declined such services and stated, "I am ready to plead, and I want to waive probation. I want to get my sentence." The court asked him if there had been any promises or any forcing to cause him to plead guilty, and he replied that this was his own idea, that no one had

talked to him, and that it was also his own idea to ask for immediate judgment and to waive any referral to the probation officer. He was thereupon sentenced to state prison.

In his application for a writ of error *coram nobis* he concedes that he did refuse the counsel offered to him by the trial court, but states that the waiver was not competent in that the appellant did not understand the import of such a waiver. He further stated that his sister-in-law was unable to speak very much English, Spanish being her native language, and that she had gone to the Greyhound Bus Depot to get this package thinking that it was clothing, and was thereupon taken into custody by the officers; that her questioning caused the appellant to be interrogated by the police officers and threatened by them that unless he admitted ownership of the narcotics his sister-in-law would be prosecuted, and in order to save his sister-in-law such harassment appellant admitted ownership. Appellant also claims that this procedure established unlawful entrapment inasmuch as the package of narcotics was addressed to one Manuel Gonzales at 4047 N. Willow Avenue, while the appellant lived at 1047 N. Willow Avenue.

The second point in his petition was that the waiver of his right to counsel was not an intelligent and competent waiver.

After consideration by the trial judge, who was also the judge at the time of the original proceedings, the petition was denied. No affidavits were filed by the appellant, nor were there any counteraffidavits filed by the district attorney, which should have and could have been filed.

█ The appellant was guilty of laches in connection with the filing of his petition in that he waited a period of three years before filing the same, which presented no matters to the court which were not known to him and which could not in the exercise of due diligence have been discovered by him substantially earlier than the time of his motion for the writ. In other words, he has stated no grounds for relief. (*People* v. *Welch,* 61 Cal.2d 786 [40 Cal.Rptr. 238, 394 P.2d 926]; *People* v. *Shorts,* 32 Cal.2d 502, 512 [197 P.2d 330]; *People* v. *Mendez,* 28 Cal.2d 686 [171 P.2d 425]; *People* v. *Reid,* 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435].)

It is apparent by the facts alleged by the appellant that such were known to him at the time of the original proceedings in the superior court. He has in no manner explained the three-year delay in the filing of the petition and the action of the trial court can be supported on this ground alone.

(*People* v. *Painter*, 214 Cal.App.2d 93, 97 [29 Cal.Rptr. 121] ; *People* v. *Waldo*, 224 Cal.App.2d 542, 546 [36 Cal.Rptr. 868] ; *People* v. *Blevins*, 222 Cal.App.2d 801, 804 [35 Cal. Rptr. 438, 36 Cal.Rptr. 191] ; *People* v. *Quigley*, 222 Cal. App.2d 694, 701 [35 Cal.Rptr. 393].)

█ Appellant cites *People* v. *Butterfield*, 37 Cal.App.2d 140 [99 P.2d 310], where a fellow prisoner of the defendant, acting as a stool pigeon, persuaded the defendant that if he pled guilty he would not be punished for any offense higher than a misdemeanor; defendant did so, but received a first degree murder sentence. The facts of that case are somewhat comparable to those in *People* v. *Painter, supra,* 214 Cal. App.2d 93. However, the present case differs in that appellant's petition fails to disclose facts that his plea of guilty was so improperly induced, and therefore, *Butterfield* does not apply to the instant case.

Appellant had previous experience with similar narcotics charges; he was fully advised that the charge would result in a prison sentence and he was questioned with regard to whether his plea was voluntary or had been induced, and the record does not support him in any of his contentions. He has shown no evidence by affidavit or otherwise tending to show any connection of the police with the alleged bill of lading that arrived at the Greyhound Bus Depot, nor has he shown that the police had anything to do with the procurement of the narcotics by him.

█ *Coram nobis* is not the proper vehicle in which to allege violation of constitutional rights, as this is the function of a writ of habeas corpus. (*People* v. *Waldo, supra,* 224 Cal. App.2d 542; *People* v. *Blevins, supra,* 222 Cal.App.2d 801; *People* v. *Quigley, supra,* 222 Cal.App.2d 694.)

(At oral argument, appellant's attorney stated that such a writ was pending in the First District Court of Appeal.)

█ The transcript reveals that the appellant was offered the right to have counsel on two separate occasions. He had previous experience with prior convictions and prison terms. He displayed his awareness of this in the fact that he said he was not eligible for probation.

In *In re Chester,* 52 Cal.2d 87, a habeas corpus proceeding, the court stated at page 91 [338 P.2d 431] : "Since the record discloses (i) that petitioner was informed of his right to have counsel appointed to represent him when he was arraigned in the superior court and (ii) that he waived his right to counsel at the time of his arraignment, it is clear that he has

not met the burden of proof resting upon him with respect to his claim that he was denied the right to counsel.''

The appellant, by his plea of guilty, has admitted all the elements of the offense and cannot attack any failure of proof of the corpus delicti at this time. (*In re Seiterle,* 61 Cal.2d 651 [39 Cal.Rptr. 716, 394 P.2d 556]; *In re McVickers,* 29 Cal.2d 264 [176 P.2d 40].)

The order is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1965.