[Crim. No. 12911.    Second Dist., Div. One.    Aug. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. BARBARA WILLIAMS et al., Defendants and Appellants.

Marks & Schneider, Burton Marks and Earl J. Opsahl for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—Barbara Williams and John Adams appeal separately the denial of their motion to vacate their respective pleas of guilty to one count each of bribery and the judgment and sentence of each entered pursuant to their pleas. This motion, coming after judgment and sentence was pronounced on each, is properly treated as a writ of error *coram nobis.* (*People* v. *Jennings,* 121 Cal.App.2d 531, 532 [263 P.2d 37]) from the denial of which this appeal is taken.

Appellants were indicted by the grand jury on numerous

counts of bribery and solicitation thereof. Each originally pleaded not guilty to each and every count in the indictment. Later appellants requested leave to change their pleas. Ultimately each pleaded "guilty" to one separate count of bribery in violation of secton 67 of the Penal Code. On motion of the district attorney the other counts against appellants were thereupon dismissed. Probation was denied to both appellants. Adams was sentenced to imprisonment in the state prison for the term prescribed by law. Williams was sentenced to imprisonment in the California Institution for Women for the term prescribed by law and ordered to pay a fine in the amount of $5,000 plus $500 penalty assessment.

Appellants thereafter noticed their motion to vacate judgment, sentence and plea which was, by later stipulation, deemed filed as a petition for a writ of error *coram nobis*. Each waived the attorney-client privilege and substantial testimony was introduced to supplement the declarations already on file. Appellants claimed their attorney made certain factual misrepresentations to them to bring about their guilty pleas and, further, that they were deprived of their constitutional right to counsel because they received no effective representation. At the close of extensive testimony by appellants and the various counsel and prosecutors, the court denied the motions and petition. Appellants contend, in effect, that the trial court thereby abused its discretion. This contention, however, is without merit.

The record discloses that attorneys Opsahl and Bardin of Los Angeles had for about eight years prior to this case represented Adams and his father in all their legal matters. They were consulted by appellants following the grand jury indictment. They knew that Adams' stepbrother, Vine Stevens, shortly before the arrest of Adams, had been charged with bribery, pleaded guilty and requested probation; probation was denied and he was sentenced to one to fourteen years in prison. In view of the fact that his case closely paralleled that of appellants, and that the grand jury transcript, the facts of which would have to be admitted as true, was highly prejudicial because it included inflammatory, inaccurate and inadmissible material, these attorneys advised appellants that they would have to prepare carefully for a trial which was certain to meet with the district attorney's vigorous prosecution. Under the circumstances, counsel advised that a guilty plea should not be considered, even though certain events might be admitted, and no one could predict the likelihood of proba-

tion. Counsel, however, felt that after a full trial with careful protection of their constitutional rights, appellants might receive probation because it was the first offense for each. On this basis, Opsahl obtained the tapes from the grand jury hearings and, upon Adams' request, gave them to him to refresh his recollection. Thereafter Opsahl was not advised of Adams' activities until Adams later requested a substitution of attorneys, which the firm agreed to execute.

Meanwhile, John Golden, a lifelong acquaintance of Barbara Williams, was approached by her with regard to the grand jury indictment in this case the latter part of September 1965. In December 1965 John Golden reviewed the transcript of testimony adduced before the grand jury, although he never saw the indictment. Barbara Williams later visited his office accompanied by Adams and after several interviews appellants indicated that they were dissatisfied with their present counsel and requested that he undertake the case. Mr. Golden agreed to do so, but advised them that a Los Angeles lawyer would have to be associated because he would not appear there unless it should later seem advisable. Although John Golden was not officially attorney of record, he thereafter represented appellants in the trial court and received as a fee $5,000 in cash to be applied against a $10,000 promissory note for the total fee; 60 percent of the fee was paid to counsel in Los Angeles.

After accepting the case, John Golden discussed the matter with Jack Tenner, an attorney in Los Angeles. Mr. Tenner advised him what fee his office would charge for trying the case and they discussed the various alternatives facing appellants. John Golden had received the impression from conversation he held with appellants that the testimony given by Officer Paul Franey at the grand jury hearing was substantially true and that their charged offenses were also true. Jack Tenner later advised him that the district attorney's office would agree to accept a guilty plea to one count of bribery for each appellant and to dismiss thereupon all other counts, but they would take no position, pro or con, on the matter of probation. Having reached the opinion from the transcript, interviews with appellants, legal research and conferences with Jack Tenner, that appellants had neither a legal nor a factual defense to the charges, John Golden discussed the situation with members of appellants' families in San Francisco. He then explained to Adams the position the district attorney's office had taken on probation and advised Adams

that, although he felt chances for probation were good, he could not guarantee that result. Attorneys Golden and Tenner agreed that appellants had no valid defense, and, therefore, John Golden advised appellants to change their pleas to guilty as to one count each and request probation.

Appellants testified that, without knowing John Golden had received cash and a promissory note from Barbara Williams' former husband, they each paid him $6,000 in cash as his requested compensation. Neither recalled any conversations with John Golden in which they discussed Officer Franey's testimony or their contacts with him, but both testified that the attorney had assured them they would not have to go to prison, but receive at most a year's probation upon pleading guilty to one count each. Adams was under the impression that at that time John Golden had spoken to the probation department in Los Angeles and probation had been arranged. Although Adams knew that Jack Tenner had been associated as Los Angeles counsel, he did not know that John Golden intended to pay part of appellants' cash payment to him.

Neither Barbara Williams nor John Adams ever went to Jack Tenner's office or discussed with him the tapes or alleged meetings with Officer Franey. However, Jack Tenner advised Adams, outside the courtroom just prior to the change of plea, that the district attorney would drop all other counts upon a guilty plea to one count only.

John Golden was unfamiliar with the Vine Stevens case and did not hear about it until about two weeks after appellants pleaded guilty. Robert Marino, who once visited Golden's office in San Francisco with appellants and heard him advise them that they would receive only a year's probation, obtained the probation report in that case and showed it to him. Marino was under the impression that Adams gave John Golden the sum of $2,000 in cash, in addition to the legal fee, on the understanding that this constituted a necessary part of the arrangement for appellants to receive probation.

Jack Tenner testified that he reviewed the grand jury transcript and the tape recordings; he determined that the recordings were accurate and had not been altered, and he therefore felt that a trial on a plea of innocence would be long and expensive. Since, moreover, he felt appellants had no effective defense, he suggested to John Golden that they consider a guilty plea and advised him further that his legal fee would be $35,000 if there were a trial. Mr. Tenner never advised either of appellants that they would receive probation. In

fact, no deputy district attorney ever indicated · to Jack Tenner any promise of lesser sentence, immunity, probation or reward for appellants' pleas of guilty, nor did he ever relay any such assurance to John Golden. Anthony Sosich, Deputy District Attorney for the County of Los Angeles, testified that Jack Tenner picked up from his office the tape recordings from the grand jury hearing. He confirmed that at no time was any attorney, or any one of the appellants in this case, promised leniency or a reward or probation in return for a guilty plea.

Not only do Adams and Williams attack the determination of the trial court as an abuse of discretion in that they were denied effective counsel and pleaded guilty on the misrepresentations of counsel, but Barbara Williams further contends that state action induced her plea of guilty, that she never waived her right to trial by jury, that the court and district attorney failed to ascertain whether she understood the consequences of her plea, and that her illiteracy and low intelligence rendered the guilty plea coerced and involuntary.

The writ of error *coram nobis,* which is equivalent to a motion to vacate judgment (*People* v. *Shipman,* 62 Cal.2d 226, 229 [42 Cal.Rptr. 1, 397 P.2d 993], note 2; *People* v. *Adamson,* 34 Cal.2d 320, 325 [210 P.2d 13]), is not the proper vehicle for the review of alleged constitutional issues, such as denial of trial by jury (*People* v. *Tapia,* 231 Cal.App.2d 320, 323 [41 Cal.Rptr. 764]) or the right to counsel (*People* v. *Gatewood,* 182 Cal.App.2d 724, 728 [6 Cal.Rptr. 447]; *People* v. *Jennings, supra,* 121 Cal.App.2d 531, 533). It is, moreover, perfectly clear from the record that appellants were not deprived of the effective assistance of counsel of their own choice. "[Appellants'] counsel did not give up or destroy [appellants] claimed defense; rather, he fully explained to [appellants] what, in counsel's honest opinion, would be the result of presenting such claimed defense and [appellants], fully advised in the premises, accepted counsel's opinion and determined to plead guilty." (*In re Atchley,* 48 Cal.2d 408, 418-419 [310 P.2d 15].) There can be no meritorious claim in this case that counsel's lack of diligence and competence reduced the legal proceedings to a sham or farce thus demonstrating counsel's ineffective representation. (*People* v. *Ibarra,* 60 Cal.2d 460, 465-466 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Robillard,* 55 Cal.2d 88, 97 [10 Cal. Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) Indeed, recog-

nizing the numerous charges and overwhelming evidence against appellants and the fact that appellants did not themselves claim innocence of the charges, counsel's decision to enter a guilty plea to one count on the understanding that the others would then be dismissed appears reasonable and well considered. The granting or denial of probation rests always in the sound discretion of the trial judge.

Although the writ of error *coram nobis* may properly be used to attack the validity of appellants' pleas of guilty on the grounds of coercion, ignorance, mistake or fraud (*People* v. *Tuthill*, 32 Cal.2d 819, 821 [198 P.2d 505]), no sound basis appears in the record which would entitle appellants to this relief. Consent to withdraw a plea of guilty also lies within the trial court's discretion and its decision will not be disturbed on appeal unless a clear abuse of such discretion is demonstrated. (*People* v. *Brotherton*, 239 Cal.App.2d 195, 200 [48 Cal.Rptr. 513].)

A defendant who has pleaded guilty in reliance upon the promises of authorized and responsible public officials may obtain relief therefrom (*People* v. *Wadkins*, 63 Cal.2d 110 [45 Cal.Rptr. 173, 403 P.2d 429]). However, attorneys in private practice are not state officials and, ". . . In the absence of an allegation of state involvement, petitioner's allegation that counsel improperly induced him to enter a guilty plea does not state grounds for *coram nobis* relief." (*In re Nunez*, 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998]; *In re Watkins*, 64 Cal.2d 866, 872 [51 Cal.Rptr. 917, 415 P.2d 805]; *People* v. *Ynostroza*, 105 Cal.App.2d 332, 333 [232 P.2d 913].)

Finally, appellant Williams has resided all her lifetime in the State of California; in the absence of evidence to the contrary it must be assumed that despite partial illiteracy, she knows and understands oral communication. In open court, on the date of her plea, she was asked all the proper and pertinent questions concerning the nature of the charges against her, and the nature and consequences of a plea of guilty thereto, and her awareness of her constitutional rights. To all questions she responded without hesitation and affirmatively indicated that she was, moreover, aware that in exchange for her plea of guilty to one count the district attorney would dismiss all other charges but would not promise probation. Under these circumstances, we do not deem her guilty plea either coerced or involuntary.

Our judicial system, with all its constitutional safe-

guards and protections, was not designed to permit a defendant to gamble on the anticipated result of a guilty plea and, when disappointed in the outcome, thereafter re-establish a right to trial. (*People* v. *Brotherton, supra,* 239 Cal.App.2d 195, 200-204.)

The action of the trial court in denying the petition of error *coram nobis* is affirmed.

Wood, P. J., and Lillie, J., concurred.

The petition of appellant Williams for a hearing by the Supreme Court was denied October 11, 1967.