[Crim. No. 9450. In Bank. Nov. 30, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID JACOB SEITERLE, Defendant and Appellant.

334

Earl Klein, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—Defendant was indicted for the murders of Mr. and Mrs. Charles Duvel, and as to both counts he pleaded guilty to murder in the first degree. He also entered pleas of guilty to charges of several other crimes, including two counts of kidnaping for the purpose of robbery with bodily harm.

At the first penalty trial the jury fixed the punishment at death for the murders and at life imprisonment for the kidnaping offenses. On appeal the judgment was reversed insofar as it related to the issue of penalty for the murders. The portion of the judgment imposing life imprisonment for the kidnapings was modified to read "without possibility of parole," and that portion of the judgment was affirmed as modified. In all other respects the judgment was affirmed. (*People* v. *Seiterle*, 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913].)

At the second trial on the question of penalty for the murders the jury fixed the penalty at death, and that judgment was affirmed in *People* v. *Seiterle*, 59 Cal.2d 703 [31 Cal.Rptr. 67, 381 P.2d 947]. Thereafter the remittitur was recalled, and the judgment was reversed insofar as it related to the death penalty on the ground of errors of the type condemned in *People* v. *Morse*, 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. (*In re Seiterle*, 61 Cal.2d 651 [39 Cal.Rptr. 716, 394 P.2d 556].)

A third penalty trial was held, and the jury again imposed the death penalty for the murders. Motions for a new trial and for reduction of the penalty were denied, and this appeal is now before us automatically under subdivision (b) of section 1239 of the Penal Code.

Defendant contends that misconduct by the prosecu-

tion in improperly impeaching its own witnesses under the guise of refreshing their recollections resulted in a miscarriage of justice and that Penal Code section 190.1 is unconstitutional.[1] We have concluded that neither contention can be upheld and that the judgment should be affirmed.

On the night of August 10, 1960, defendant, who was then 19 years old, met two 16-year-old boys, Karl Gentry and Thomas O'Hara, in Riverside.[2] They drank some beer and became intoxicated. One of them suggested committing a robbery, and defendant said that he worked for some people who had a lot of money but that if they were robbed it would be necessary to kill them because they knew him. Thereafter defendant and his two companions drove to the home of the victims, Mr. and Mrs. Charles Duvel. O'Hara remained in the car when defendant and Gentry went to the Duvels' front door.

What happened inside the house appears primarily from the testimony of Gentry and the autopsy surgeon. Defendant did not take the stand at the third penalty trial. It appears that the Duvels came to the door when defendant and Gentry knocked and that after entering defendant stated that ''it was a robbery.'' He was holding an imitation revolver that looked real. Mrs. Duvel tried to grab it, but defendant told her to leave it alone or he would shoot her. Defendant, Gentry, and the Duvels went into a bedroom where Mrs. Duvel obtained $200, which she handed to Gentry. The Duvels apparently were ordered to disrobe, and they were then forced to lie face down on their beds and their hands and feet were tied to the bedposts by Gentry and defendant. Gentry choked Mr. Duvel and afterwards stabbed him. Gentry testified that defendant strangled Mrs. Duvel and later testified that it looked like

---

[1] Section 190.1 provides in part: ''The guilt or innocence of every person charged with an offense for which the penalty is in the alternative death or imprisonment for life shall first be determined, without a finding as to penalty. If such person has been found guilty of an offense punishable by life imprisonment or death, and has been found sane on any plea of not guilty by reason of insanity, there shall thereupon be further proceedings on the issue of penalty, and the trier of fact shall fix the penalty. Evidence may be presented at the further proceedings on the issue of penalty, of the circumstances surrounding the crime, of the defendant's background and history, and of any facts in aggravation or mitigation of the penalty. The 'determination of the penalty of life imprisonment or death shall be in the discretion of the court or jury trying the issue of fact on the evidence presented. . . .''

[2] Gentry and O'Hara were indicted for the same crimes as defendant and entered pleas of guilty on all counts. Since they were under 18 years of age at the time of the commission of the crimes, they were not subject to the death penalty. (Pen. Code, § 190.1.)

defendant choked her but that, since Gentry's vision was blurred, he could not definitely state whether defendant did so. After feeling Mrs. Duvel's pulse, Gentry told defendant that she was dead. Defendant said that Gentry had "better make sure," and Gentry stabbed her.

An autopsy surgeon testified that Mr. Duvel's death was due to multiple stab wounds and that Mrs. Duvel's death was caused by strangulation and stab wounds. According to the autopsy surgeon, Mrs. Duvel probably would have died within minutes from the strangulation alone if she had not been stabbed.

Evidence was introduced that in 1956 defendant was charged with two counts of burglary, was placed on probation, and was subsequently committed to the Youth Authority after he violated the terms of his probation. In 1958 he was charged with petty theft, and the matter was referred to his probation officer.

In urging that the prosecution improperly impeached its own witnesses under the guise of refreshing their recollections, defendant points to several instances of such asserted misconduct during the prosecution's examination of Gentry and O'Hara. The following is an example of what occurred during the examination of Gentry:

On direct examination Gentry testified that while he was with defendant and O'Hara before the murders one of them mentioned robbing someone, that defendant said he worked for some people who had a lot of money, that someone made a comment about the people recognizing defendant, and that Gentry did not remember if the comment was made by defendant or if anything was said about what would have to happen to the Duvels. The prosecution then showed Gentry his testimony in the transcript of the 1960 proceedings, and after looking at the transcript Gentry testified that he recalled his answers and they were truthful to the best of his knowledge at that time. When asked if the transcript refreshed his recollection, Gentry replied, "I read what it says but I don't remember it being said," and in response to further questions he said, "I don't remember testifying but it says there I did so I must have." Gentry was thereafter asked, "What did [defendant] tell you about the Duvels?" and Gentry replied, "Well, he said—he said that they knew him and we would have to kill them." On cross-examination Gentry testified that he thought defendant said he knew some people they could rob but if they were robbed it would be necessary to kill them.

Gentry was asked if he clearly remembered the matter, and he replied, ''I don't know if I remember it clearly or just remember it.''

■ Prior testimony of a party's own witness may be used to refresh his recollection or, in case of surprise and damage, to impeach him. (Code Civ. Proc., §§ 2047, 2049; *People* v. *Selby*, 198 Cal. 426, 431 [245 P. 426]; *People* v. *Allen*, 47 Cal.App.2d 735, 743-744 [118 P.2d 927]; cf. *People* v. *Kidd*, 56 Cal.2d 759, 766 [16 Cal.Rptr. 793, 366 P.2d 49]; *People* v. *MacEwing*, 45 Cal.2d 218, 227 [288 P.2d 257].) ■ If there is not surprise and damage, counsel may not under the guise of refreshing his witness's memory get before the jury a former statement when the object is to discredit the verity of the testimony presently given. (*People* v. *Hamilton*, 60 Cal.2d 105, 115 [32 Cal.Rptr. 4, 383 P.2d 412]; *People* v. *Zammora*, 66 Cal.App.2d 166, 217 [152 P.2d 180].)

■ In the instant case it is apparent that the prosecution in showing Gentry the transcript of the 1960 proceedings was not seeking to discredit his present testimony that he did not remember certain matters but rather was seeking to refresh his recollection. It would not have been unreasonable for the prosecution to have believed that the transcript of the 1960 proceedings would refresh Gentry's recollection, especially since at the second penalty trial, which was held in 1962, Gentry similarly first testified to a lack of memory of certain matters such as what defendant said about knowing someone who had money and after Gentry's recollection was refreshed at that trial he testified that defendant said he knew some people who had a lot of money but they would recognize him and it would be necessary to kill them.

■ With respect to O'Hara, the prosecution likewise sought to elicit testimony that defendant said he knew some people they could rob and the people would have to be killed because he knew them. O'Hara testified that he did not remember whether defendant made this statement. After the prosecution showed him transcripts of his prior testimony, he testified that his recollection was not refreshed and again said that he did not remember whether defendant made the statement. The prosecution then proceeded to ask questions that disclosed that in 1960 and 1962 O'Hara testified that defendant made the statement. Following O'Hara's testimony the court told the jury that certain questions were asked him for the purpose of impeaching his testimony that he did not recall any discussions on the night of the crimes and that proof of

his prior inconsistent statements was to be considered solely for that purpose. At the close of the trial the court similarly told the jury that a prior inconsistent statement of a witness could be considered only for the purpose of testing the credibility of the witness.

The prosecution, in showing O'Hara the transcripts of his prior testimony, manifestly was seeking to refresh his recollection rather than to discredit his present testimony that he did not remember whether defendant made the statement. O'Hara, however, made it clear that his recollection was not refreshed by the transcripts, and when the prosecution proceeded to ask questions that disclosed O'Hara's prior testimony it is apparent that the prosecution thereby impeached its own witness.

The impeachment was proper. Defendant argues that the prosecution was not surprised by O'Hara's testimony that he did not remember whether defendant made the statement, because at the second penalty trial O'Hara's initial testimony was also "negative." However, at the second penalty trial after O'Hara's recollection was refreshed he testified that defendant said he knew "somebody" they could rob and "the people" would have to be killed because he knew them. The prosecution could properly claim to be surprised at the instant penalty trial when O'Hara testified that he did not remember whether defendant made the statement. (Cf. *People* v. *Spinosa*, 115 Cal.App.2d 659, 669 [252 P.2d 409].)

It is clear that there was damage to the prosecution from that testimony by O'Hara. The prosecution, in its opening statement, told the jury in effect that the evidence would show that during a discussion with O'Hara and Gentry, defendant stated that he knew some people they could rob but it would be necessary to kill the people since they knew him. From O'Hara's testimony that he did not remember whether defendant made the statement an inference might be drawn that the statement was not made. Other inferences, of course, might be drawn instead from that testimony, but this does not show that the prosecution was not damaged by O'Hara's testimony.

In arguing that the prosecution was not damaged, defendant relies on cases such as *People* v. *Newson*, 37 Cal.2d 34 [230 P.2d 618]. There the defendant was charged with murder, and a witness for the prosecution was asked on direct examination if at the time of the crime she had seen anyone in a building where the killing had occurred. She replied, "No, I didn't." Over objection the district attorney was permitted to impeach

the witness by proving her prior extrajudicial statements that she had seen defendant in the building at that time. The admission of her prior statements was held to be error on the ground that her testimony was "purely of a negative character . . . neither favorable to one side nor the other."

■ *People* v. *LeBeau*, 39 Cal.2d 146, 149 [245 P.2d 302], however, pointed out that "The *Newson* case did not, of course, purport to lay down a rule that all negative answers are harmless, and it is necessary to determine on the facts of each case whether the testimony of the witness sought to be impeached has actually damaged the party calling him." (See also *People* v. *Pickens*, 190 Cal.App.2d 138, 146-147 [11 Cal. Rptr. 795].)

■ Defendant also asserts that the prosecution asked O'Hara to refresh his recollection by the use of a confession which was inadmissible under *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. After O'Hara testified that he did not receive any money from Gentry or defendant, he was asked if he remembered writing a statement in 1960 in the presence of officers. Defendant objected on the ground of *Dorado* to referring to the statement. The prosecution stated that it did not intend to offer the document into evidence and merely wished to see if it refreshed O'Hara's recollection, and defendant withdrew his objection. The prosecution showed O'Hara the document and asked if it refreshed his recollection whether he received any money from defendant or Gentry, and O'Hara replied that he "wrote it down there" but did not recall defendant's handing him $20. The matter the prosecution sought to bring out was of little, if any, importance, and we are satisfied that prejudicial error was not committed.

■ Defendant argues in effect that Penal Code section 190.1 is unconstitutional because it imposes upon the trier of facts the duty of selecting the penalty without specifying any guidelines or standards to be followed. The constitutionality of section 190.1, however, has previously been upheld. (*People* v. *Shipp*, 59 Cal.2d 845, 853 [31 Cal.Rptr. 457, 382 P.2d 577]; *People* v. *Duncan*, 51 Cal.2d 523, 529 [334 P.2d 858].) *Giaccio* v. *Pennsylvania*, 382 U.S. 399 [15 L.Ed.2d 447, 86 S.Ct. 518], cited by defendant, is not contrary to the cited cases. *Giaccio* held that a statute permitting a jury to assess costs against an acquitted defendant was constitutionally invalid because of vagueness and the absence of any standards sufficient to enable defendants to protect themselves against arbitrary and discriminatory imposition of costs. The court expressly stated

in *Giaccio* that "In so holding we intend to cast no doubt whatever on the constitutionality of the settled practice of many states to leave to juries finding defendants guilty of a crime the power to fix punishment within legally prescribed limits." (382 U.S. at p. 405, fn. 8.)

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

Appellant's petition for a rehearing was denied December 28, 1966. Mosk, J., did not participate therein.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.