UNITED STATES ex rel. Leaman Russell **SMITH, Petitioner,**

v.

**Louis E. NELSON, Warden, San Quentin Prison, Respondent.**

No. 48011.

United States District Court
N. D. California.

Oct. 20, 1967.

Anthony G. Amsterdam and J. Bradley Bunnin, San Francisco, Cal., for petitioner.

John Murphy and George R. Nock, Deputy Atty. Gen., of San Francisco, Cal., for respondent.

## ORDER

SWEIGERT, Justice.

## I. INTRODUCTION

This is a petition for a Writ of Habeas Corpus filed herein under the provisions of 28 U.S.C. § 2241, by Leaman Russell Smith, a prisoner at the California State Prison at San Quentin, California.

It appears from the record that on February 1, 1964, petitioner and Barbara Ruth Walker, a co-defendant, attempted to cash a fraudulent check at the Sears, Roebuck Store in Los Angeles. The cashier became suspicious and summoned the store security officer, who then accompanied Smith and Walker into an inner office and telephoned the Wilshire Detective Bureau located next door to Sears. A few minutes later Police Officers Monaghan, Endler and Jurman arrived. Smith suddenly drew a gun from under his coat and shot it several times while attempting to escape from the room, killing two officers, Monaghan and Endler, and wounding Officer Jurman and Mr. Suzuki, an employee of Sears.

After a jury trial in the Superior Court, County of Los Angeles, petitioner was found guilty of the crimes of conspiracy to commit forgery and burglary (Cal.Pen.Code § 182), two counts of first degree murder (Cal.Pen.Code § 187), and two counts of attempted murder (Cal.Pen.Code §§ 164 and 187. Petitioner was also found by the jury to have suffered six prior felony convictions.

On August 7, 1964, after verdict of the jury for sentence of death on the two counts of first degree murder, petitioner was sentenced accordingly and also to the terms prescribed by law for the other offenses.

Thereafter, represented by counsel, Burton Marks, petitioner appealed his conviction to the California Supreme Court, which Court, on January 4, 1966, affirmed the conviction. (See: People v. Smith, 63 Cal.2d 779, 48 Cal.Rptr. 382, 409 P.2d 222). A motion for rehearing was denied by that Court on February 2, 1966.

Petitioner then filed in *propria persona* a petition for writ of certiorari in the U. S. Supreme Court which was denied by that Court.

Petitioner then filed in *propria persona* a petition for habeas corpus in the

California Supreme Court on March 28, 1966, which petition was denied on April 13, 1966. A second petition was filed in *propria persona* in the California Supreme Court on June 30, 1967 and was denied on July 12, 1967.

Thereafter, represented by counsel appointed by this Court, J. Bradley Bunnin, petitioner filed the pending petition for writ of habeas corpus. This Court held an informal hearing, counsel for petitioner and the State being present, and set the matter for further formal hearing on Friday, October 13, 1967. At this hearing Anthony Amsterdam, Professor of Law at the University of Pennsylvania, accepted appointment as co-counsel for petitioner in this proceeding. A full day of hearing was had and the matter was continued to this day, October 16th.

After introduction into evidence of the transcript of proceedings in the State Court, together with certain of the exhibits, this Court denied the petition, granted certificate of probable cause and, upon filing of notice of appeal, stayed the execution of petitioner's sentence pending final termination of appeal proceedings.

### A. *First Claim*

The petition alleges in substance and effect (Par. IV, p. 4) for its First Claim that there is no provision under California law for the appointment of counsel for indigents (subsequent to initial appeal to the State Supreme Court) to advise the indigent of any legitimate legal claims which have not been exhausted by or which arise subsequent to the appeal, for example: (1) aiding petitioner in the preparation of petitions for certiorari to the United States Supreme Court, (2) aiding in the preparation of petitions for writs of habeas corpus or coram nobis in the state courts, (3) instituting executive clemency proceedings, (4) instituting sanity proceedings concerning insanity arising after the appeal, and (5) aiding in the preparation of petitions for writs of habeas corpus in the federal courts.

Petitioner recognizes, however, that the law of California does provide and did provide petitioner in this case with counsel to prosecute an automatic appeal from the judgment of conviction to the California Supreme Court.

Petitioner also recognizes that the law of California does require appointment of counsel to prosecute collateral proceedings, i. e., habeas corpus or coram nobis, in the state courts whenever a petitioner sets forth factual allegations stating a prima facie case for such collateral relief. (People v. Shipman, 62 Cal.2d 226, 42 Cal.Rptr. 1, 397 P.2d 993 (1965)).

Petitioner's allegation, therefore, presents only the narrow question of law whether failure of state law to further require appointment of counsel to aid petitioner, regardless of any such prima facie showing, in the preparation of (1) petitions for coram nobis or habeas corpus in the state courts, (2) petitions for certiorari to the United States Supreme Court, and (3) for instituting executive clemency applications and post-appeal sanity applications, constitutes deprival of petitioner's rights under the Constitution of the United States.

As far as petitions for certiorari to the United States Supreme Court are concerned, the right to that remedy is provided by federal law (28 U.S.C. § 2101(d), and U. S. Supreme Court Rules 19–20) and, as noted by Justice Harlan in his dissent in Douglas v. People of State of California (1963), 372 U.S. 353, at pp. 365–366, 83 S.Ct. 814 at pp. 820–821, 9 L.Ed.2d 811, any constitutional requirement for the appointment of counsel to prepare or prosecute such petitions would seem to rest, not upon the State of California, but upon the United States Supreme Court which has, nevertheless, followed the practice of both granting and denying such petitions without appointment of counsel, even when presented by defendants who file as indigents in *propria persona.*

As far as petitions for habeas corpus and coram nobis in the state courts are concerned, petitioner cites no

authority in support of his argument that the State of California is constitutionally required to go further than the state has gone in People v. Shipman, supra, concerning appointment of counsel for habeas corpus or coram nobis. On the contrary, the U. S. Supreme Court in *Douglas*, supra, dealing with the requirement of appointment of counsel upon appeal from a criminal conviction, has recognized that even though counsel must be provided for the "one and only appeal", " * * * it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination'."

█ Further, so far as appointment of counsel to aid petitioner in the preparation or prosecution of habeas corpus proceedings is concerned, this question of law has become moot because here, (although having prepared and prosecuted his two unsuccessful petitions for habeas corpus to the State Supreme Court in *propria persona*), petitioner has now been provided by this Court with counsel to both prepare and prosecute this habeas corpus petition in which he can and does raise all constitutional questions which could have been raised before the state courts.

It should be noted that in this case, petitioner does not claim or allege that he ever requested any state court to appoint counsel to aid him either in preparing or prosecuting his state habeas corpus petition or even that he would have accepted court appointed counsel. It appears only that he selectively asked numerous private counsel to represent him. Nevertheless, we have assumed for the purposes of this case that, if he is correct in his constitutional argument, his failure to affirmatively request counsel from the state court would not amount to a waiver of such constitutional right. (See Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967).

Thus, petitioner's allegation is further narrowed to the remaining question whether the State of California is con-

stitutionally required to provide counsel for the additional purpose of aiding petitioner to prepare and prosecute applications for executive clemency, post appeal sanity hearings and similar applications.

█ This Court concludes that, whatever may be the desirability for appointment of counsel for such matters occurring after the judicial process has ended, it is a matter for California legislation and does not present any question under the Constitution of the United States.

### B. *Second Claim*

The petition alleges (Par. V, p. 5) in substance and effect for its Second Claim, that imposition of the death penalty is invalid because under the laws of California a jury in a first degree murder case has unlimited, undirected and unreviewable discretion in determining whether the death penalty or life imprisonment shall be imposed. Petitioner argues that there should be a legal, fair, uniform standard for guidance in making such a decision.

This question has already been considered by the California courts in other cases holding adversely to petitioner. In People v. Seiterle, 54 Cal.Rptr. 745, 420 P.2d 217 (1966), an appeal to the California Supreme Court from judgment on a jury's verdict fixing penalty at death, the appellant contended that California's provision for separate penalty trial (Penal Code § 190.1) is unconstitutional "because it imposes upon the trier of facts the duty of selecting the penalty without specifying any guidelines or standards to be followed". (54 Cal.Rptr. at 749). The Court held that "[t]he constitutionality of section 190.1, however, has previously been upheld," citing People v. Shipp, 59 Cal.2d 845, 31 Cal.Rptr. 457, 382 P.2d 577; and People v. Duncan, 51 Cal.2d 523, 334 P.2d 858.

Further, in People v. Hill, 66 A.C. 531 at 564, 58 Cal.Rptr. 340 at 360, 426 P.2d 908 at 928 the California Supreme Court held, citing *Seiterle*, supra, with approval, "We have heretofore declared that Section 190.1 is not unconstitutionally vague."

■ Although these rulings of the California Supreme Court do not preclude consideration of the constitutional questions by this and higher federal courts, this Court concludes that the law and practice of California does not violate any provision of the Constitution of the United States.

In Giaccio v. State of Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) the United States Supreme Court held that a Pennsylvania statute permitting jurors to determine by their verdict whether an acquitted defendant shall pay the court costs was invalid under the Due Process Clause because of vagueness and absence of any standards sufficient to enable defendants to protect themselves against arbitrary and discriminatory impositions of costs. The Court, however, carefully and specifically noted that:

> "In so holding we intend to cast no doubt whatever on the constitutionality of the settled practice of many States to leave to juries finding defendants guilty of a crime the power to fix punishment within legally prescribed limits." (382 U.S. at p. 405, n. 8, 86 S.Ct. at p. 522).

### C. *Third Claim (Exclusion of Jurors)*

■ The petition alleges (Par. VI, p. 6) in substance and effect for its Third Claim that under the law of California (Cal.Pen.Code § 1074(8)) persons with conscientious opinions regarding the death penalty are excluded from the juries which determine the guilt of defendants and the penalty to be imposed.

Section 1074(8) provides in substance and effect that in capital cases prospective jurors entertaining such conscientious opinions as would preclude them from finding the defendant guilty, must neither be permitted nor compelled to serve.

Petitioner's argument against this law, and the practice thereunder has been already considered by the California Supreme Court in its opinion affirming petitioner's conviction on automatic appeal,

People v. Smith, supra, 63 Cal.2d 779, 48 Cal.Rptr. at p. 389, 409 P.2d at p. 229.

It has also been considered by that Court in other cases. See People v. Gonzales, 58 Cal.Rptr. 361, 426 P.2d 929 (1967), and People v. Riser, 47 Cal.2d 566, 305 P.2d 1 (1956).

There is no allegation that the practice provided by Section 1074(8), as interpreted by the California Supreme Court, was not properly followed in the pending case. On the contrary, the record shows that it was properly applied and that the Supreme Court, applying proper federal standards in affirming petitioner's conviction, so held.

### D. *Fourth Claim*

The petition alleges (Par. VII, p. 7) in substance and effect for its Fourth Claim that the death penalty constitutes cruel and unusual punishment in that (a) as contended in Second Claim, such sentence can be imposed without adequate legal standards, and further (b) it can be imposed regardless of extenuating circumstances, and (c) its manner of operation inflicts loss of life without commensurate justification.

In People v. Thomas, 65 A.C. 749, 56 Cal.Rptr. 305, 423 P.2d 233 (1967), the California Supreme Court rejected a contention that the death penalty constitutes cruel and unusual punishment *per se.*

Petitioner's argument in the pending case is based largely on the assumption that imposition of the death penalty, considered as imposed in California without any adequate legal standard to guide the jury, is cruel and unusual punishment —an argument which has already been discussed under the Second Claim, supra.

■ This Court concludes that the law and practice of the State of California, providing for imposition of the death penalty for murder of the first degree, i. e., all murder perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem (See Cal.Pen.Code § 189) does

not constitute imposition of cruel and unusual punishment within the meaning of the Eighth and/or Fourteenth Amendments of the United States Constitution.

The question whether, and, if so, under what circumstances, the State of California should impose the death penalty— a controversial question—is a matter for its legislature or its people to determine, and does not, as here presented, raise any constitutional question.

## II. RE EVIDENTIARY HEARING

Assuming, as we must, that all the factual allegations of the petition, including Claims First through Fourth are true, these allegations merely set forth what the law and practice of California admittedly is in the various areas involved. The only questions presented are whether such law and practice of the State have deprived petitioner of any right guaranteed by the Constitution of the United States. In other words, only questions of law are raised and there is no need for ordering an evidentiary hearing.

Nevertheless, counsel for petitioner have requested that a hearing be granted to enable them to present what counsel describe as "constitutional facts"—e. g., expert opinions, surveys, polls and the like—to support their arguments concerning Claims First through Fourth. Just what factual issues would be involved at such a hearing is not quite clear.

Since the Court has assumed for the purpose of this proceeding that all of the allegations of fact (excluding conclusions of law and argument) in the petition are true, we are of the opinion that the kind of factual data, which counsel have in mind, would be more appropriate-ly presented to the California Legislature than to this Court.

Further, any reviewing Court could, if it deemed necessary, take notice of the kind of factual data contemplated by counsel and, further, if deemed necessary, order hearing for that purpose or remand the cause to this Court for such a hearing.

■ This Court, however, is of the opinion that there is neither need nor excuse for such a hearing as counsel requests.

We do not discuss here the argumentative pros and cons concerning whether the law and practice of the State of California should be changed in certain respects. We merely hold that these arguments do not pertain to any facts which are essential to a determination of the questions of law raised by the petition.

## III. EXHAUSTION OF STATE REMEDIES

■ It will be recalled that petitioner here has already twice made post-appeal applications for writ of habeas corpus to the State Supreme Court in *propria persona*.[1]

The second of these petitions did present to the State Supreme Court what is herein described as petitioner's Fifth Claim (to be hereafter discussed i. e., failure of the trial court to grant severance and erroneous admission into evidence of statements of co-defendants). As to this claim, therefore, there is no reason to refer for reapplication to the state court.

Petitioner, however, did not present to that Court what have here been described as his First, Second, Third and Fourth Claims, although, as previously

---

1. In the first petition of March 28, 1966, (Exhibit 2, p. 3 herein) the sole contention presented was that petitioner was denied representation, either in person or by counsel, and was denied notice of judgment for the hearing reimposing the death sentence, after affirmance on automatic appeal. Cal.Penal Code § 1193 provides that, when judgment imposing the death penalty has been affirmed by the appellate court, sentence may be reimposed upon the defendant in his absence by the court from which such appeal was taken. This Court holds that this proceeding does not amount to a "critical stage of the criminal proceedings," and that, therefore, the first petition did not state a ground for habeas corpus relief.

noted, petitioner's Third Claim was considered and held adversely to petitioner by the California Supreme Court on automatic appeal.

So far as petitioner's Second Claim (failure to provide legal standards for imposition of death penalty), and his Third Claim (exclusion of jurors under Cal.P.C. § 1074(8)) are concerned, the pending petition concedes that, as to these claims, there are no effective state remedies available to petitioner in the California Courts within the meaning of 28 U.S.C. § 2254 because the Supreme Court of California has already ruled adversely to those claims in other cases in which they were raised and because no subsequent decision of the California Supreme Court has altered the binding effect of those decisions.

With respect to petitioner's First Claim (no provision for counsel to prepare and prosecute post-appeal remedies) and his Fourth Claim (cruel and unusual punishment), the petition (Par. IX(b), p. 9) implies that petitioner has exhausted his state remedies and merely alleges that a previous order of this Court in Hill v. Nelson, Civ. No. 47318, D. C., 271 F.Supp. 439, dated August 24, 1967, requiring four named petitioners therein to present the claims, herein described as First, Second, Third and Fourth Claims, to the California Supreme Court, will soon be complied with and that the decision of that Court in those cases will constitute a sufficient compliance by this petitioner with 28 U. S.C. § 2254.

A procedural question is presented concerning whether this Court should, nevertheless, as now urged by petitioner's counsel at the hearing of this petition, order this petitioner to reapply to the California Supreme Court in order to present his First, Second, Third and Fourth Claims notwithstanding petitioner's previous express concession that he has no effective, available remedy in the California Courts as to his Second and Third Claims and his implied allegation that such applications in another case will constitute compliance so far as this petition is concerned, with 28 U.S.C. § 2254.

That procedure was followed in Hill v. Nelson, No. 47318, D.C., 271 F.Supp. 439.

It appears, however, from what is said at p. 14 of the order in that case that the Court there acted upon the assumption that " * * * petitioners *must* present these two contentions" (referring to what are here described as Claims First and Fourth) "to the State Court *before* this Court can proceed to examine the substantive issues set forth in the petition * * *." (emphasis added).

Title 28 U.S.C. § 2254 (1966) provides in part as follows:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be *granted* unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." (emphasis added).

It has been held, however, that, although the Court may not *grant* habeas corpus without compliance with this section, it may *deny* the application without requiring exhaustion of state remedies where, as in In re Ernst, 294 F.2d 556, 561–562 (3d Cir. 1961), the federal court is satisfied that the petition does not state facts upon which habeas corpus relief could be granted.

In In re Ernst, supra, involving a petitioner under state court sentence of death, the Court, interpreting Section 2254 to this effect, denied relief without taking any testimony, although the issues presented had not been brought to the attention of the New Jersey Court. Incidentally, one of the issues there presented is substantially the same as petitioner's Claim Three here, (pp. 560–561).

We are of the opinion, therefore, that this Court can examine the substantive issues to determine whether habeas corpus relief could be granted

thereon and, if not, deny the petition without ordering any further exhaustion of state remedies as to Claims First through Fourth.

As already noted, we do find that habeas corpus relief cannot be granted upon the allegations of Claims First through Fourth.

■ On the question whether these, or any of these claims should be referred, nevertheless, to the state court, we are of the opinion that under the circumstances this need not and should not be required.

The California Supreme Court has held adversely as to Claims Second and Third. As to Claim First (right to counsel), that Claim, as noted in discussion thereon above, is now moot—except in narrow respects which, we conclude, present no substantial claim of unconstitutionality. As to Claim Fourth (cruel and unusual punishment), that Claim, as noted in discussion thereon above, has in effect already been decided adversely to petitioner by the State Supreme Court.

For these reasons we find that the circumstances are such that further exhaustion of state remedies would be ineffective to protect the rights of petitioner and having also considered the advisability of reference for reasons of comity, we find that such reference would only delay the eventual federal determination necessary to finally resolve the four issues presented.

## IV. FIFTH CLAIM

The petition alleges (Par. VIII, p. 8), in substance and effect, for its Fifth Claim that the trial court's failure in this petitioner's case to grant a motion for severance of trial as between petitioner and his two co-defendants, in order to exclude hearsay statements made by the co-defendants and implicating petitioner, was error of constitutional magnitude because it required the jury to make a determination that was psychologically impossible for it to make.

This question has already been presented to, carefully considered by, and held adversely to petitioner by the California Supreme Court in its opinion affirming his conviction on automatic appeal in People v. Smith, supra.

This question has also been presented to the California Supreme Court in petitioner's habeas corpus application of June 20, 1967 to that court, which petition was denied.

■ Although these determinations do not preclude consideration of the Constitutional question by this and higher federal courts, this Court concludes that petitioner's allegation, considered in the light of the record in this case, does not present any error of constitutional magnitude. On the contrary, the record shows that the California Courts fairly followed and applied federal Constitutional standards in rejecting petitioner's contentions on this issue.

In Delli Paoli v. United States, 352 U. S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), the United States Supreme Court held that admission in evidence of a co-defendant's confession, without deleting references to a complaining co-defendant, does not necessarily constitute reversible error where it is accompanied by proper instructions that the confession is to be considered only in determining the guilt of the confessor and not the guilt of any other defendant.

It is true that the California Courts have adopted specific, stringent rules of practice implementing Cal.Pen.Code § 1098 concerning the introduction of extra-judicial statements implicating a co-defendant. These rules call for either severance or deletion of matter implicating a co-defendant. (See People v. Aranda, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 (1965)). The record here shows that the *Aranda* case was cited by petitioner to the California Supreme Court prior to affirmance of petitioner's conviction. The California courts have also held, however, that failure to follow these *Aranda* rules is reversible error only if it causes prejudice under the California test of prejudice. (See People v. Charles, 66 Adv.Cal.Reports 325, 57 Cal.Rptr. 745, 425 P.2d 545 (1967).

In the pending case, although there was neither severance nor deletion, the trial court correctly and carefully instructed the jury that, where evidence has been received of a statement of one of the defendants after his arrest and in the absence of his co-defendants, such statements can be considered only as evidence against the defendant who made such statement *and cannot be considered for any purpose as evidence against his co-defendants.* (emphasis added).

In this case, therefore, the statements of the co-defendants were in evidence, not as against petitioner for any purpose, but only against the co-defendants and presumably the jury followed the court's instruction.

It will be noted, therefore, that in the pending case the circumstance that multiple defendants were involved led to this limiting instruction excluding the extrajudicial statements of the co-defendants from consideration as evidence against petitioner. Normally, such a limiting instruction is not present when extra-judicial statements, claimed to have been unconstitutionally obtained, are, nevertheless, used against the defendant who made them. In such a situation the question of prejudice against such a defendant is directly presented and prejudice is so strongly suggested as to be presumptive. Such is not the manner in which the question of prejudice is hereby presented.

We must, however, proceed to examine the question whether the use of such extra-judicial statements against petitioner's co-defendants only, should be deemed, nevertheless, prejudicial to this petitioner.

In the pending case the California Supreme Court, noting that the erroneously introduced statements of the co-defendants (implicating petitioner) had been obtained from these co-defendants in violation of their constitutional right to the advice of counsel under the *Escobedo* and *Dorado* rule, proceeded to consider this question of prejudice against petitioner and in so doing applied, not its state test of prejudice, but the more exacting federal test that would be applied in a case where the unconstitutionally obtained statements of petitioner, himself, were being used against him.

In its opinion affirming petitioner's conviction, the Court, referring to statements of petitioner's trial co-defendants (which it held were improperly admitted against those co-defendants) said (People v. Smith, supra, 48 Cal.Rptr. p. 398, 409 P.2d p. 238):

"That error, however, did not taint Smith's judgment of conviction. The jury was carefully instructed that each extrajudicial statement was limited to the defendant making it, and that statements of a defendant-accomplice must be corroborated and should be viewed with distrust. More importantly, the independent evidence of Smith's guilt was overwhelming; not only was he positively identified by numerous eyewitnesses, but he took the stand himself and in effect made a detailed judicial confession of all the crimes charged. In the premises there is no reasonable possibility that the error in admitting the statements of Mrs. Walker and Castner might have contributed to Smith's conviction. (Cal. Const., art. VI, § 4½; Fahy v. State of Connecticut (1963) 375 U.S. 85, 86–87, 84 S.Ct. 229 [11 L.Ed.2d 171;] People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243; People v. Gilbert (1965) Cal., 47 Cal.Rptr. 909, 408 P. 2d 365)."

It will be observed that the California Court there applied to the record the federal test of prejudicial error applied by the U. S. Supreme Court in Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) and Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ In *Fahy* and *Chapman* the U. S. Supreme Court recognized that the admission of unconstitutionally obtained evidence, although presumably harmful error, may be non-prejudicial, harmless error where upon examination of the record it can be demonstrated by the state beyond a reasonable doubt that

there is no reasonable possibility that the erroneously introduced evidence might have contributed to the conviction.

In Wilson v. Anderson, 379 F.2d 330 (9th Cir. June, 1967), the Ninth Circuit applied this federal test of *Fahy* and *Chapman* in reversing a District Court's grant of a Writ of Habeas Corpus. The Writ had been granted on the ground of prejudicial comment on petitioner's failure to take the stand. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Court in *Anderson*, holding no prejudice, set forth the guiding rules as follows:

"(1) '[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction'; (2) Any 'harmless error' rule applied to the violation, by a state court, of a provision of the United States Constitution, must be judged by a federal standard; * * * (3) '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' "

 Examination of the record in the pending case leads this Court to the conclusion that the California Court was correct in its determination that there is no reasonable possibility that introduction of the co-defendant's statements might have contributed to the conviction of petitioner.

Entirely apart from the limiting instruction excluding those statements as evidence against petitioner, examination of the record shows that other competent and valid evidence, independent of the co-defendants' extra-judicial statements and independent also of petitioner's own trial testimony, is indeed so "overwhelming" that there is no reasonable possibility that either those statements or his own testimony might have contributed to his conviction.

Further, that independent evidence would have been ample to support petitioner's conviction of first degree murder on either or both of the two grounds advanced by the state, i. e., that the killings of officers Monaghan and Endler were deliberate and premeditated or that they occurred in the perpetration of a burglary, i. e., entry into the Sears store to commit the felony of forgery.

Further, in this case, the petitioner took the stand and, as the State Supreme Court found, made a detailed admission of facts which would fully support his first degree murder conviction.

Concerning petitioner's claim that he was constrained to take the stand because of the erroneous introduction of his co-defendants' extra-judicial statements, we will assume for the purpose of this case that a defendant can be constrained to forego his right to remain silent and to take the stand because of evidence erroneously introduced—even though the evidence was introduced, as in this case, not against him, but only against his co-defendants.

We must further assume that such a constraint arises where a defendant is confronted with a choice of allowing illegally introduced matter, implicating him, to remain undenied in the record or taking the stand to deny it or so explain it as to negate the implication.

In this case, however, the record shows that, when petitioner took the stand he did so, not for any such purpose but to admit in substance and effect the implicating matter of which he now complains —his involvement in a previous and continuing conspiracy to commit forgery culminating in the attempt to cash the forged check at Sears and the two killings stemming therefrom—substantially all the implicating matter contained in the extra-judicial statements of the co-defendants.

We adopt as a fair summary of the record the California Supreme Court's opinion and with respect to petitioner's testimony the following thereof at p. 388:

"As for himself, he made in effect a judicial confession of all the crimes

charged against him. He admitted conceiving the idea of the check forging operation, and described his participation therein during December 1963 and January 1964. As to the events of February 1, he admitted stopping on the way to Sears with Mrs. Walker at a number of liquor stores and food markets for the express purpose of cashing fictitious checks. He admitted presenting such a check at the cashier's department of Sears; and although he testified that he 'didn't intend to kill anyone', his own description of the ensuing events discloses an unmistakable intent to shoot his way out of his predicament regardless of the cost in human lives."

Petitioner claims he stated on the stand that he had not formed an intent to pass the bogus check *at the time* he entered Sears but formed such intent *after he had entered* (R.T. 2190–2193)—a purely subjective assertion contrary to the evidence of his conduct and in any event a matter relevant only to the issue of perpetration of burglary.

The Court concludes from the record that defendants' testimony on the stand could not, under the circumstances shown therein, have been constrained by the erroneous evidence and, further, the Court finds from its examination of the record, beyond a reasonable doubt, that the erroneous introduction of the extra-judicial statements of the co-defendants did not contribute to and could not by any reasonable possibility have contributed to his conviction of first degree murder and that any such possibility would be strained and unreasonable in the light of the whole record.

For the reasons above set forth, the Court finds and concludes that, based on the petition filed herein, petitioner's Claims First through Fifth fail to establish any violation of petitioner's federal Constitutional rights.

Accordingly, it is hereby ordered that the petition for Writ of Habeas Corpus filed herein be denied.