[Crim. No. 12183.    In Bank.    July 10, 1969.]

In re DAVID JACOB SEITERLE on Habeas Corpus.

Earl Klein, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and John T. Murphy, Deputy Attorney General, for Respondent.

TOBRINER, J.—In this habeas corpus application, petitioner David Jacob Seiterle, presently under sentence of death after conviction of two counts of first degree murder and two counts of kidnaping for the purpose of robbery with bodily

harm,[1] contends that under the rule of *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], the trial court erroneously excused for cause a venireman who was conscientiously opposed to capital punishment. The *voir dire* examination of the prospective jurors reveals that such an error occurred. Accordingly, under compulsion of *Witherspoon* the judgment must be reversed insofar as it relates to penalty.

The following colloquy transpired between the trial court and prospective juror Mrs. Bernice Prestwood:

"Q. Is there anything about the nature of this case, Mrs. Prestwood, that would prevent your serving fairly and impartially to the defendant as well as to the People of the State of California?

"A. Yes.

"Q. And what is that, Mrs. Prestwood?

"A. I don't agree with the death penalty.

"Q. Do you have such conscientious scruples against the death penalty and its imposition that you feel you could not serve fairly and impartially to the People of the State of California as well as to the defendant if selected in this case?

"A. Yes.

"Q. And nothing that you have heard during the last two or three days [i.e., the period during which other veniremen had been questioned] has changed that in any way?

"A. No.

"Q. And you feel nothing would?

"A. No."

Defense counsel stated that he had no questions, and the court granted a challenge for cause by the prosecutor.

■ We agree with petitioner that the trial court's exclusion for cause of Mrs. Prestwood violated the rule of *Witherspoon* because her statements did not make it "unmistakably clear . . . that [she] would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial . . . ." (*Witherspoon* v. *Illinois, supra,* 391 U.S. at p. 522 & fn. 21 [20 L.Ed.2d at p. 785].)

---

[1]For prior proceedings see *People* v. *Seiterle* (1961) 56 Cal.2d 320 [14 Cal.Rptr. 681, 363 P.2d 913]; *Seiterle* v. *Superior Court* (1962) 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697]; *People* v. *Seiterle* (1963) 59 Cal.2d 703 [31 Cal.Rptr. 67, 381 P.2d 947], cert. den. 375 U.S. 887 [11 L.Ed.2d 116, 84 S.Ct. 163]; *In re Seiterle* (1964) 61 Cal.2d 651 [39 Cal.Rptr. 716, 394 P.2d 556], cert. den. (1965) 379 U.S. 992 [13 L.Ed.2d 613, 85 S.Ct. 710]; *People* v. *Seiterle* (1966) 65 Cal.2d 333 [54 Cal.Rptr. 745, 420 P.2d 217], cert. den. (1967) 387 U.S. 912 [18 L.Ed.2d 633, 87 S.Ct. 1699].

Mrs. Prestwood initially stated, ''I don't agree with the death penalty.'' ■ We have consistently held that such general objections to capital punishment cannot properly serve as the basis for a challenge for cause under *Witherspoon*. (*In re Arguello* (1969) *ante*, pp. 13, 14 [76 Cal. Rptr. 633, 452 P.2d 921]; *People* v. *Terry* (1969) 70 Cal.2d 410, 416-417 [75 Cal.Rptr. 199, 450 P.2d 591]; *In re Anderson* (1968) 69 Cal.2d 613, 617-618 [73 Cal.Rptr. 21, 447 P.2d 117].)

Mrs. Prestwood next answered ''Yes'' to the question, ''Do you have such conscientious scruples against the death penalty and its imposition that you feel you could not serve fairly and impartially to the People of the State of California as well as to the defendant if selected in this case?'' ■ We have consistently held that conscientious scruples which affect merely a prospective juror's ability to serve fairly and impartially at the penalty phase of a capital case cannot properly sustain a challenge for cause under *Witherspoon*. (*In re Eli* (1969) *ante*, pp. 214, 215-216 [77 Cal.Rptr. 665, 454 P.2d 337]; *People* v. *Osuna* (1969) 70 Cal.2d 759, 769 [76 Cal.Rptr. 462, 452 P.2d 678]; *People* v. *Risenhoover* (1968) 70 Cal.2d 39, 55 [73 Cal.Rptr. 533, 447 P.2d 925]; *In re Anderson*, *supra*, 69 Cal.2d 613, 617-618.)

■ Under the authority of *Witherspoon*, we hold that the trial court in the present case committed error in excusing venireman Prestwood for cause, and that the judgment imposing the death penalty must be reversed insofar as it relates to penalty.

■ Despite the manifest error in excluding this prospective juror for cause, the People seek to ''cure'' the defect by reference to the entire *voir dire* examination which preceded the colloquy between the trial court and Mrs. Prestwood. The Attorney General argues that the judge had consistently applied the standard set forth in *Witherspoon* in excusing jurors who opposed the death penalty; and furthermore, that Mrs. Prestwood's statement that nothing she had heard during the preceding *voir dire* examination of other jurors had changed her opinion on the subject constitutes an unambiguous indication that she would automatically vote against the imposition of capital punishment. Such a contention rests upon unacceptable assumptions and non sequitorial logic.

First, in a case such as the present which was tried before the United States Supreme Court announced its decision in

*Witherspoon*, a trial court would have applied the correct *Witherspoon* standards only fortuitously since "[i]t is obvious that *Witherspoon* made a material change in the law in this state." (*In re Anderson, supra*, 69 Cal.2d 613, 619.) Assuming that the trial court in the instant case did apply the correct standards in the *voir dire* preceding that of Mrs. Prestwood, however, that fact cannot excuse the court from applying the correct standard to Mrs. Prestwood herself. We recently rejected the suggestion that we adopt a rule of harmless error for violations of *Witherspoon* in the case of *In re Arguello, supra, ante,* pp. 13, 15-16. Nothing in the present case casts any doubt upon the soundness of our conclusion in *Arguello*.

Second, Mrs. Prestwood's affirmance that nothing she had heard during the previous *voir dire* examination of other veniremen had changed her mind does not thereby transform her generalized objections to capital punishment into a statement that she could never vote for the death penalty under any circumstances. She merely stated that nothing had affected her attitude to the effect that: (1) she did not agree with the death penalty; and (2) her scruples would prevent her from being fair and impartial to the People as well as the defendant. We are still faced by the fact that these two statements do not constitute a proper ground upon which to excuse Mrs. Prestwood under the standards set forth in *Witherspoon*.

Third, since the trial court asked Mrs. Prestwood merely whether she could serve fairly and impartially to both the People and the defendant and not whether she thought she was qualified to serve as a juror in this case, the reference by the trial court to what "you have heard during the last two or three days" does not incorporate the prior correct rulings on challenges for cause into the specific examination of Mrs. Prestwood. The fact remains that the trial court asked her a question to which an affirmative answer could not stand as a basis for a challenge for cause under *Witherspoon*. If the court had asked her, "After hearing the previous *voir dire* with respect to jurors' opposition to the death penalty and after observing which of those jurors who expressed scruples concerning capital punishment I excused for cause, do you have such conscientious scruples which would disqualify you from participating in this trial,"[2] then and only then would

---

[2] In stating this hypothetical question, we do not sanction its actual use. In fact, we believe the trial court, not the venireman, should judge the qualifications of jurors, especially with respect to opposition to capital punishment.

we have any reason to look back and seek to determine whether the prior *voir dire* made it, clear to the particular juror that the only basis for a challenge for cause was an opinion which required its holder automatically to vote against the imposition of capital punishment.

In the present case, the trial court did not ask Mrs. Prestwood to decide if she could properly serve as a juror; it simply asked whether she could serve fairly and impartially; she said that she could not do so and that nothing she had heard could change her opinion that she could not serve fairly and impartially. She indicated nothing about whether she could subordinate her views on capital punishment and vote for the death penalty; she did not state that she could never vote for the death penalty in any case. As such her *voir dire* examination provides no basis to sustain the challenge for cause.

The case of *People* v. *Varnum* (1969) 70 Cal.2d 480, [75 Cal.Rptr. 161, 450 P.2d 553], provides no authority for the Attorney General's position. In *Varnum* we were faced with the venireman's statement "that *under no circumstances in a proper case* would she ever vote for the death penalty" (*People* v. *Varnum, supra,* 70 Cal.2d 480, 494); we said, ". . . neither the words 'in a proper case' nor any other words, taken alone, can be seized upon as a touchstone by which to determine the quality of the juror under *Witherspoon.*" (P. 493.) Consequently we searched the record to determine the meaning theretofore attributed to the ambiguous words "in a proper case," concluding that "Our examination of the record satisfies us that in responding to the words 'in a proper case' Mrs. Bronsal clearly understood that it was within her discretion to determine what was a proper case." (P. 494-495.) The uncertain terms thus served as the launching pad for the journey into the context of the entire *voir dire* examination.

The necessity for this excursion arises because of the ambiguity in the particular venireman's examination; we seek to supply meaning where there would otherwise appear to be none. (*Id.*) In the present case, the particular colloquy between the trial court and Mrs. Prestwood contains no ambiguity. The questions by the court are clear, the prospective juror's responses unequivocal. The inquiry into the previous *voir dire* examination is neither appropriate nor, as explained *supra,* can such an inquiry in the present case serve to change the obvious meaning of Mrs. Prestwood's state-

ments and answers.[3] And these answers cannot properly sustain the challenge for cause which the trial court granted in the present case.

The writ is granted as to the penalty trial. The remittitur issued in *People* v. *Seiterle,* Crim. 9450, is recalled and the judgment imposing the death penalty is reversed insofar as it relates to penalty. In all other respects the judgment is affirmed.

Traynor, C. J., Peters, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. Seiterle contends that it was error under *Witherspoon* v. *Illinois,* 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], to exclude for cause veniremen Cody and Prestwood. However, venireman Cody was properly excluded because her responses made it "unmistakably clear . . . that [she] would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial. . . ." (*Witherspoon* v. *Illinois, supra,* at p. 522, fn. 21 [20 L.Ed.2d at p. 785].)[1] The *voir dire* examination of venireman Prestwood is as follows:

"Q. [By the Court] Is there anything about the nature of this case, Mrs. Prestwood, that would prevent your serving fairly and impartially to the defendant as well as to the People of the State of California?

---

[3] *Witherspoon* requires that "[u]nless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." (391 U.S. at p. 516, fn. 9 [20 L.Ed.2d at p. 871].) This mandate indicates that the venireman himself must state unequivocally his inability to vote for the death penalty in any case; the approach suggested by the Attorney General would violate the language of *Witherspoon* by allowing statements from other veniremen and questions and rulings by the trial court on other challenges for cause to stand as the equivalent of a statement by the particular venireman himself. Mrs. Prestwood's unambiguous statements of opposition to capital punishment fall short of that degree of opposition which would justify a challenge for cause under *Witherspoon*. Without a further statement by Mrs. Prestwood herself that she could never vote to impose the death penalty, we cannot assume and so conclude that such is her position.

[1] The *voir dire* examination of Mrs. Cody is as follows:

"Q. [By the Court] Mrs. Cody, you have been present through all of the proceedings, have you not?

"A. Yes, I have.

" . . . . . . . .

"Q. Is there anything about the nature of this action that prevents you serving fairly and impartially to the defendant, as well as the people of the State of California if selected as a juror?

"A. Yes, I am opposed to capital punishment.

"Q. Do you have such conscientious scruples against the death penalty and its imposition that you feel you could not serve fairly and impar-

"A. Yes.

"Q. And what is that, Mrs. Prestwood?

"A. I don't agree with the death penalty.

"Q. Do you have such conscientious scruples against the death penalty and its imposition that you feel you could not serve fairly and impartially to the People of the State of California as well as to the defendant if selected in this case?

"A. Yes.

"Q. And nothing that you have heard during the last two or three days [i.e. the period during which other veniremen had been questioned] has changed that in any way?

"A. No.

"Q. And you feel nothing would?

"A. No."

Defense counsel stated that he had no questions, and the court then granted a challenge for cause by the prosecutor.

Isolating these few questions and answers from the several days of *voir dire* examination which preceded them and considering them alone could give rise to doubt whether there was *Witherspoon* error in excusing venireman Prestwood for cause without further questioning. However, when the questions and answers are considered in context with the previous *voir dire* examination and rulings of the court, there can be no reasonable doubt that the court did not violate *Witherspoon* in excluding her.

That it is our duty to consider the *voir dire* of individual jurors in context with the examination which preceded it has been plainly set forth in the recent unanimous decision in *People* v. *Varnum,* 70 Cal.2d 480, 492-493 [75 Cal.Rptr. 161, 450 P.2d 553].

Applying the rules of *Varnum* to the instant case, we find that the court and counsel by their painstaking *voir dire*

tially to the people of the State of California as well as to the defendant if selected in this case?

"A. Yes. I believe given this choice I would not ever vote for the death penalty.

"Q. You understand that is the sole issue that will have to be determined by this jury?

"A. Yes.

"Q. And you feel that you could not under any circumstances return a verdict requiring the imposition of the death penalty?

"A. Not under these circumstances. I think if it were mandatory under certain standards that if given a choice I would—

"THE COURT: Do you wish to examine the prospective juror?

"MR. CHAPMAN [Defense counsel]: No, your Honor."

The court then granted the prosecutor's challenge of Mrs. Cody for cause.

examination and the court's rulings had made it unmistakably clear to the prospective jurors that the only such jurors who would be excused for cause by reason of their conscientious scruples or objections to the death penalty would be those who could not or would not agree to impose it under any circumstances. Those veniremen who expressed mere distaste for the death penalty were not excused.[2] When Mrs. Prestwood's responses are viewed in the context of the prior examination of other veniremen and the court's rulings, it is apparent that she was indicating with fervor and frankness that nothing could change her opposition to the imposition of the death penalty in any case or under any circumstances. *Witherspoon* stated "It is entirely possible . . . that even a juror who believes that capital punishment should never be inflicted and who is irrevocably committed to its abolition could nonetheless subordinate his personal views to what he perceived to be his duty to abide by his oath as a juror and to obey the law of the State." (391 U.S. at pp. 514-515, fn. 7 [20 L.Ed.2d at p. 781].) Certainly, there is good cause in the instant case to believe that this juror would

---

[2] During the preliminary questioning by the judge, venireman Pastorius indicated she did not favor capital punishment and felt she could not act fairly and impartially as a juror; she was not excused at that point, and neither were Mrs. Jordan, who said "I definitely don't believe in capital punishment and under no circumstances could I vote for it," nor Mrs. Hicks who voiced "My objection is the same as Mrs. Jordan's." Mrs. Jordan was then asked: "Mrs. Jordan, do I understand from your expression that you under no circumstances feel that the provisions of the law of the State of California provide that the death penalty should be enforced? MRS. JORDAN: I couldn't say whether it should or shouldn't. I personally don't believe in the death penalty. I think only one man has that right and I cannot be convinced that two wrongs make a right and I could never never follow it. THE COURT: Under any circumstances? A. No." Mrs. Hicks was then asked "Is your state of mind such that you could not under any circumstances return a verdict imposing a death penalty in any case? A. Yes. THE COURT: In other words you feel that under no circumstances you could? A. Well, there would be exceptions— I would be pretty prejudice [sic]." The court indicated he would not excuse either Mrs. Jordan or Mrs. Hicks for cause at that time. Mrs. Beason indicated she had "a horror of the death penalty, capital punishment" but was willing to impose it under certain circumstances and in a proper case. She was not excused for cause, nor were several other jurors who expressed similar views.

Subsequently during examination by defense counsel Mrs. Jordan again expressed the view that she could not impose the death penalty under any circumstances and was then excused for cause. Mrs. Pastorius was asked: "Mrs. Pastorius, is it your position that under no circumstances, under no set of facts could you possibly impose the death penalty? A. Yes, it is," and was excused for cause. Mrs. Hicks was also excused for the same reason but since her further examination took place after Mrs. Prestwood had been excused it could have had no bearing upon the particular issue as to the propriety of the latter's discharge for cause.

neither subordinate nor change her personal views on infliction of the death penalty. In fact, she asserted nothing would change her opinion.

The statements of venireman Prestwood are somewhat similar to those of a venireman in *In re Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 618, who was held to have been improperly excluded for cause.[3] However, in the instant case, unlike *Anderson* and *Saterfield, supra,* the court's inquiry did not end with the venireman's answer that she felt she could not be fair to both sides because of her opposition to capital punishment; here the court pursued the subject further to ascertain the extent of the juror's feelings. In doing so the court alluded specifically to all she had "heard during the last two or three days" to see if that had changed her mind and whether anything would change her opinion, to which she repeatedly answered in the negative. These followup questions serve to distinguish this case from *Anderson* and *Saterfield, supra.*

Veniremen Pastorius, Jordan, and Hill were also excluded for cause upon the basis of their opposition to the death penalty. No claim is made, nor does it appear, that their exclusion was erroneous under *Witherspoon* v. *Illinois, supra,* 391 U.S. 510. The examinations of veniremen Pastorius and Jordan revealed that they would not impose capital punishment under any circumstances. (See fn. 2 herein.) Venireman Hicks made conflicting statements as to whether there were any circumstances under which she could impose the death penalty, but her final statement was that she could not impose that penalty under any circumstances.[4] Since, as hereafter

---

[3]The venireman in *Anderson* and *Saterfield, supra,* was asked, "Do you know of any reason you couldn't be a fair and impartial juror in this case?" The venireman replied, "Yes, sir, I do. I don't believe in capital punishment" and was thereupon excused for cause.

[4]Early in the *voir dire* examination Mrs. Hicks made conflicting statements as to whether there were any circumstances under which she could vote for the death penalty. (See fn. 2 herein.) Later the court resumed its examination of her, and the following occurred:

"Q. [By the Court] Mrs. Hicks, as I recall when the Court asked you at the outset of this case if you had any legal cause to show why you could not serve on the jury, I believe you stated that you had conscientious scruples against the death penalty and its imposition in the State of California. Am I correct?

"[MRS. HICKS] That is right.

"Q. Are your conscientious scruples such that if selected as a juror in this case you could not under any circumstances return a verdict—

"A. Yes, sir.

"Q. That required the imposition of the death penalty?

discussed, the trial court gave every evidence of excluding only those who would not impose the death penalty under any circumstances it impliedly found in accord with her final statement, and the trial court's determination is binding upon us. "Where a prospective juror gives conflicting answers to questions relevant to his impartiality, the trial court's determination as to his state of mind is binding upon an appellate court. [Citations.]" (*People* v. *Linden,* 52 Cal.2d 1, 22 [338 P.2d 397].)

The instant trial preceded the decision in *Witherspoon* v. *Illinois, supra,* 391 U.S. 510, which made a material change in the law in this state with respect to the standards for excluding for cause veniremen opposed to capital punishment (*In re Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 618-619), but here, the standards the trial court scrupulously imposed comported fully with the subsequently announced *Witherspoon* standards. This is quite evident not only from the court's detailed examination of the five veniremen excluded on the ground of their attitude toward the death penalty but also from the court's actions with respect to other veniremen.

Finding no error under the application of *Witherspoon, supra,* I would discharge the order to show cause and deny the petition for a writ.

McComb, J., and Herndon, J. pro tem.,* concurred.

---

"A. Yes, sir.

"Q. Your state of mind is such that you couldn't under any circumstances vote for the death penalty?

"A. That is right."

Defense counsel stated that he did not wish to examine Mrs. Hicks, and the court then excused her for cause.

*Assigned by the Chairman of the Judicial Council.